APPEAL OF MARY HILLENMEYER, EXECUTRIX OF THE ESTATE OF H. F. HILLENMEYER, DECEASED.

Docket No. 1862.  Submitted June 1, 1925.  Decided November 11, 1925.

A transfer by decedent to his wife, *held* not to have been made in contemplation of death.

*F. A. Bullock, Esq.*, for the taxpayer.
*J. F. Greaney, Esq.*, for the Commissioner.

Before IVINS,[1] MARQUETTE, and MORRIS.

This appeal is from the determination of a deficiency in estate tax for the year 1923 in the amount of $1,655.46.

Two questions were presented by the petition: (1) Whether a certain written instrument constituted a transfer made in contem-

---

[1] This decision was prepared during Mr. Ivins's term of office.

plation of death? (2) The value of certain real estate included within the gross estate of the decedent.

The contention of the taxpayer on the second question was conceded by the Commissioner at the hearing.

### FINDINGS OF FACT.

The taxpayer is the executrix of the estate of H. F. Hillenmeyer, deceased, who was a resident of Lexington, Ky., at the date of his decease, March 3, 1923.

In 1913, the decedent was 63 years old. For many years he had engaged in the nursery business, in which he had been very active, and had amassed a modest fortune. He had six children. Under date of February 28, 1913, he executed the following trust agreement to provide a fund separate from his other property, in order to protect his family in case there was a failure of his other investments:

THIS TRUST AGREEMENT, made this 28th day of February, 1913, between H. F. Hillenmeyer of Fayette County, Kentucky, party of the first part, and Security Trust Company, a corporation organized and doing business under the laws of Kentucky, with its principal office in the City of Lexington, Kentucky, party of the second part,

WITNESSETH, That the party of the first part has this day deposited with second party the sum of Thirty Thousand Dollars ($30,000) receipt of which is hereby acknowledged by said second party, to be held and used by said second party as follows:

1. Said second party is to invest and reinvest said sum, or any additions thereto, or any balance thereof from time to time, in such manner as it may deem to be for the best interests of the party of the first part, or those who may be entitled to the trust funds. Said first party reserves the right, however, to direct the form of investment in which said funds, or any part thereof, may be placed, but in the absence of such direction on the part of said first party the party of the second part shall have discretion to invest same according to its own judgment.

2. Out of the income derived from said investments, the party of the second part shall pay the costs of administering the trust funds, and taxes and any other expenses that may be properly chargeable against same, and the balance of the income shall be added from time to time to the principal and invested as the principal is to be invested, as set forth in Section One hereof. Said party of the first part, however, reserves the right to withdraw any part, or all, of said income at any time, and any part, or all, of the principal belonging to said fund.

3. The wife of the first party is otherwise provided for, and the purpose is further to provide for her independently of the fund held under this agreement. If, however, by any vicissitude her income from these sources should be so impaired that she can not maintain herself in the same comfort as in the past, it shall be her privilege to apply to the second party for such of the earnings of this trust fund as may be needed for her comfortable support, and she shall be the judge thereof. Said Trustee shall thereupon make the disbursements applied for by her; provided these withdrawals by her or for her use shall not exceed in any year the then annual earnings of this fund.

4. After her death the then net earnings of this trust fund shall semi-annually, or more often in the discretion and convenience of the second party, be equally divided among first party's children, Herbert, Ernest, Raymond, Maysie, Louis and Walter. Should any child or children die without lawful issue, the division of said income shall then be equal among the survivors. Should any child or children die, leaving lawful issue not then yet twenty-one years old, the parent's share of the annual earnings shall be paid, as heretofore provided, to the natural or appointed guardian of such issue, for their support and education.

5. After the death of each child, as any of its children—first party's grandchildren—shall attain the age of twenty-one years, the second party shall then divide equally among such grandchildren of first party their parent's share in this trust, and its accruements to that date. Should all the children of any child or children of first party die before they are twenty-one years old, leaving no lawful descendents, then such share or shares shall be equally divided among the surviving groups as before indicated.

6. Any additions made by first party to this fund during his life shall be evidenced by second party's receipt, and shall be held on the same terms and conditions as the deposit now made by first party is directed to be held.

From 1898 to 1922, as each child became of age or married, decedent gave them a farm or money to set them up in business, and all but one, who entered the priesthood, established their businesses in the neighborhood of the family home occupied by the decedent and his wife. In most instances, the children worked the farms given them by their father.

In 1913 the decedent was of sound and vigorous health and very active in operating the nursery and his other business. In that year he turned the nursery over to one of his sons but still continued active in business. Up to the date of his death, the decedent was a director in the First and City National Bank, and attended the weekly meetings of directors as regularly as any other director. The last meeting he attended was on January 16, 1923.

The decedent attended directors' meetings during 1922 on the following dates: January 17, February 14, February 28, March 7, March 14, March 28, April 4, April 18, August 18, September 29.

On March 28, 1922, the decedent executed the following paper:

A trust agreement entered into by H. F. Hillenmeyer, party of the first part, and the Security Trust Company, party of the second part, on February 28, 1913, for the further safeguarding of the future of his wife and grandchildren, is hereby altered in these respects, to wit:

1st. While the party of the first part, H. F. Hillenmeyer, is still to retain the management thereof as heretofore set out, he now gives same, in fee simple, to his wife, with right in her to terminate same at any time by giving party of the second part notice of such purpose in writing.

2nd. In the event of the death or physical inability of the party of the first part to guide acceptably to her said trust, then her son Herbert, or the son of her choice, shall by this covenant be vested with similar power of direction, as also of limitation.

3rd. As a deed of gift in fee simple, hers is an absolute right to devise by will or entail to any object or subjects of her affection or bounty that her motherly or womanly instinct may suggest.

The decedent executed the foregoing paper because he had fully provided for his children and thought his wife should have the property of the trust to do with as she deemed proper, to have the income for herself if she desired it or to give to their children as she thought best. He had entire confidence in his wife. The funds were in the possession of the Security Trust Co. from 1913 to the decedent's death, and at no time did the decedent retake possession of any of the trust estate.

For some five years preceding his death the decedent had rheumatism, gout, and other diseases common in elderly people. He never had any serious illness even to the day that he died. His family did not consider him sick on that day. No one had stayed with him and he was alone when he died. No nurse had been secured because no one believed that he needed one. The family had ample means and could well have afforded all medical attention if that had been considered necessary. The decedent left an estate valued at over $200,000.

Neither the trust agreement dated February 28, 1913, nor the amendatory agreement dated March 28, 1922, was made by the decedent in contemplation of death.

The value of the 95-acre homestead estate of the decedent at the date of his death was $19,000.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

MARQUETTE: It is admitted by the Commissioner that the valuation of the real estate as shown upon the return has been proved to be correct by force of the evidence introduced at the hearing.

There remains the question whether the trust funds should be included within the gross estate. That question rests upon the construction of the Revenue Act of 1921, section 402 (c). Whether there was a transfer or the creation of a trust made in contemplation of death is a question of fact. The Commissioner contended that the amendatory agreement of March 28, 1922, constituted a transfer made within two years prior to death, thereby placing the burden on the taxpayer of contradicting the presumption. The taxpayer has fully met that burden by the proof.

We find, upon the evidence, that neither the 1913 nor the 1922 agreement was made in contemplation of death. The decedent must have had possessions in 1913 of value of about $200,000. He executed the trust agreement when his health and vigor were strong. The property put in trust was about $30,000 in value. It was a trust mainly for accumulation but subject to the use of the annual income by the wife during her life if she desired it. The decedent reserved the right to determine the form of the investments and a power of revocation to the extent of withdrawing the funds of the estate if he desired. Such reservation could only have contemplated the continuance of his mortal existence. His sole purpose in creating the trust in 1913 was as a conservative precaution—the setting aside of a portion of his property (about one-seventh) as a provision in case his other investments proved to be losing ventures—a wise provision to safeguard the welfare of his wife, whether he lived or died, and his children upon the decease of his wife.

Prior to 1913 he had given other property to at least one of his children, and after 1913 he provided farms for all of the others. In 1922 when, to be sure, he was a man over 70 years of age, but still remarkably active for one of his years, he decided that as he had so provided for his children, he would give the trust property absolutely to his wife as her sole property in fee simple. He did so with no more thought of his dying then than he had had in 1913.

The 1922 instrument was rather crudely expressed but the intention is apparent. He desired to change the trust only to the extent of making his wife the sole beneficiary during his life as she had been under the 1913 instrument, but with full power to use and enjoy the property, principal, or income in her entire discretion. He still retained, however, the dictation as to investments, showing thereby that he contemplated living. He provided for his possible incapacity by naming one of his sons who would take his place in the event of his being incapable of managing the investments. That provision evidences sound judgment, contemplating not his death but his incapacity to act while living and a possible argument among the six children as to which of them should guide their mother in her control of her own property. The contemplation of incapacity is not the contemplation of death within the meaning of the statute.

The very day the decedent executed the paper of March 28, 1922, he attended a directors' meeting, and he was as regular in attendance as any other member of the board throughout that year as well as prior. The last meeting he attended was January 16, 1923, or about two months prior to his death. Yet none of his family expected his death. He was active up to the day he died. There was no protracted illness requiring a nurse. He died suddenly when alone.

There was not a scintilla of evidence in this appeal that the agreement of 1922 was executed in contemplation of death. There was direct evidence showing a clear and sound motive, contradicting the presumption raised by the statute.

Furthermore, the original agreement was executed about three years prior to the first Estate Tax Law. There could have been no thought of evasion or avoidance of a Federal tax. The 1922 agreement was merely an amendment to the prior agreement. Beyond the fact that the decedent was then nine years older and the conditions had been changed by reason of his gifts to his children during the interim, the situation was little different in 1922 from that in 1913.

Depositions were taken in Lexington, Ky. There was testimony by eight persons who knew the decedent well—a son, a physician, two bank officials, and three neighbors. There was full opportunity for cross examination. Witnesses might have been examined for the Commissioner if any facts could have refuted the testimony given. None were produced.

Upon all of the evidence in this appeal we are convinced that there was no transfer made or trust created in contemplation of death, and, accordingly, the determination of the Commissioner must be disallowed.