*1325 OPINION.
Marquette:
It is admitted by the Commissioner that the valuation of the real estate as shown upon the return has been proved to be correct by force of the evidence introduced at the hearing.
There remains the question whether the trust funds should be included within the gross estate. That question rests upon the construction of the Revenue Act of 1921, section 402(c). Whether there was a transfer or the creation of a trust made in contemplation of death is a question of fact. The Commissioner contended that the amendatory agreement of March 28, 1922, constituted a transfer made within two years prior to death, thereby placing the burden on the taxpayer of contradicting the presumption. The taxpayer has fully met that burden by the proof.
*1326 We find, upon the evidence, that neither the 1918 nor the 1922 agreement was made in contemplation of death. The decedent must have had possessions in 1913 of value of about $200,000. He executed the trust agreement when his health and vigor were strong. The property put in trust was about $30,000 in value. It was a trust mainly for accumulation but subject to the use of the annual income by the wife during her life if she desired it. The decedent reserved the right to determine the form of the investments and a power of revocation to the extent of withdrawing the funds of the estate if he desired. Such reservation could only have contemplated the continuance of his mortal existence. His sole purpose in creating the trust in 1913 was as a conservative precaution — the setting aside of a portion of his property (about one-seventh) as a provision in case his other investments proved to be losing ventures — a wise provision to safeguard the welfare of his wife, whether he lived or died, and his children upon the decease of his wife.
Prior to 1913 he had given other property to at least one of his children, and after 1913 he provided farms for all of the others. In 1922 when, to be súre, he was a man over Y0 years of age, but still remarkably active for one of his years, he decided that as he had so provided for his children, he would give the trust property absolutely to his wife as her sole property in fee simple. He did so with no more thought of his dying then than he had had in 1913.
The 1922 instrument was rather crudely expressed but the intention is apparent. He desired to change the trust only to the extent of making his wife the sole beneficiary during his life as she had been under the 1913 instrument, but with full power to use and enjoy the property, principal, or income in her entire discretion. He still retained, however, the dictation as to investments, showing thereby that he contemplated living. He provided for his possible incapacity by naming one of his sons who would take his place in the event of his being incapable of managing the investments. That provision evidences sound judgment, contemplating not his death but his incapacity to act while living and a possible argument among the six children as to which of them should guide their mother in her control of her own property. The contemplation of incapacity is not the contemplation of death within the meaning of the statute.
' The very day the decedent executed the paper of March 28, 1922, he attended a directors’ meeting, and he was as regular in attendance as any other member of the board throughout that year as well as prior. The last meeting he attended was January 16, 1923, or about two months prior to his death. Yet none of his family expected his death. He was active up to the day he died. There was no protracted illness requiring a nurse. He died suddenly when alone.
*1327 There was not a scintilla of evidence in this appeal that the agreement of 1922 was executed in contemplation of death. There was direct evidence showing a clear and sound motive, contradicting the presumption raised by the statute.
Furthermore, the original agreement was executed about three years prior to the first Estate Tax Law. There could have been no thought of evasion or avoidance of a Federal tax. The 1922 agreement was merely an amendment to the prior agreement. Beyond the fact that the decedent was then nine years older and the conditions had been changed by reason of his gifts to his children during the interim, the situation was little different in 1922 from that in 1913.
Depositions were taken in Lexington, Ky. There was testimony by eight persons who knew the decedent well — a son, a physician, two bank officials, and three neighbors. There was full opportunity for cross examination. Witnesses might have been examined for the Commissioner if any facts could have refuted the testimony given. None were produced.
Upon all of the evidence in this appeal we are convinced that there was no transfer made or trust .created in contemplation of death, and, accordingly, the determination of the Commissioner must be disallowed.