ESTATE OF A. J. SCHULZ, EMMA JANE SCHULZ, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5686.   Promulgated August 1, 1927.

Transfers made, while decedent was in good health and active in business affairs, for the purpose of carrying out a prenuptial promise, *held* not to have been made in contemplation of death.

*Harry C. Weeks, Esq.,* for the petitioner.
*Thomas M. Wilkins, Esq.,* for the respondent.

This proceeding results from the determination by the respondent of a deficiency in estate tax in the amount of $1,643.55. The sole issue involved is whether or not certain transfers by the decedent to his wife were made in contemplation of death and should be included in the gross estate.

## FINDINGS OF FACT.

Emma Jane Schulz is the independent executrix of the Estate of A. J. Schulz. The latter, a resident of Wichita Falls, Tex., died on December 3, 1923. He left an estate of approximately $125,000, exclusive of all properties which the respondent alleges were transferred in contemplation of death.

The properties included by the respondent as property transferred in contemplation of death, consisted of the following:

| | |
|---|---:|
| United States bonds | $27,313.68 |
| War savings stamps | 1,000.00 |
| Money in savings account, First National Bank, Wichita Falls, Tex | 10,608.00 |
| Money in savings account, City National Bank, Wichita Falls, Tex | 1,466.78 |
| Money in checking account, City National Bank | 685.09 |
| Money in checking account, First National Bank | 7,984.44 |
| Stock in First National Bank | 3,600.00 |
| Notes of T. L. Burnett | 21,733.35 |
| Certificate of deposit, Farmers State Bank of Burkburnett, Tex | 8,000.00 |

Prior to the year 1919, A. J. Schulz had been married, reared a family and had secured a divorce from his wife. In the last mentioned year, he wrote his sister, living in Minnesota, requesting her aid in the selection of a second wife. His sister decided upon a person she deemed suitable, and the decedent left his home in Wichita Falls, Tex., to proceed to Minnesota to become acquainted with the person his sister had selected. On June 21, 1919, he married Emma Jane Schulz. The decedent advised his wife, prior to marriage, of his financial condition and promised to give her all Government bonds, which he then owned, and to make other substantial gifts until his wealth was evenly divided between them. At the time of his marriage, decedent was suffering from a throat trouble, and shortly thereafter, he went to a hospital in Minnesota to cause an examination to be made for the same. The examining physician made a general physical examination and found that the decedent was afflicted with an enlarged prostate gland and advised an operation. The operation was successfully performed and the decedent entirely recovered. He and his wife returned to Wichita Falls late in the year 1919. Soon after they returned, he fulfilled his promise and gave to his wife all the bonds which he then owned, as well as made her a gift of a residence.

All of the United States bonds included in the gross estate of the decedent, were given to his wife in December, 1919, and remained her property at the date of his death. The savings stamps were given to his wife on July 26, 1920.

The deposits in the savings account in the City National Bank, were deposited for Emma Jane Schulz more than two years prior to the death of the decedent.

At date of death of decedent, Emma Jane Schulz had in her savings account at the First National Bank, between sixteen and seventeen thousand dollars. Of this amount, respondent included in the gross estate of decedent, $10,608. The entire savings account represented gifts made by the decedent or earnings from her own property.

The deposits in the checking account of Emma Jane Schulz, in the First National Bank, at death of decedent, amounted to $7,984.44 and represented gifts made from time to time, by her husband. Of this sum, $5,287.42 represented a refund which the decedent had received from the United States Government and which he had promised to give his wife, if and when received. The deposit of the refund check was made between September and November, 1923.

The stock in the First National Bank of Wichita Falls, had been given by decedent to his wife, on October 30, 1922.

The Burnett notes were bought on August 3, 1923, by Emma Jane Schulz, and $15,000 of the purchase price of these notes was taken from the savings account of Emma Jane Schulz, in the First National Bank of Wichita Falls. The remainder of the purchase price was supplied as a gift by the decedent.

The certificate of deposit in the Farmers State Bank of Burkburnett was issued by that bank to Emma Jane Schulz, on February 1, 1923.

After the return to Wichita Falls, late in 1919, the decedent resumed his business activities. He was a member of a partnership engaged in operating an oil and gas lease. He was in active charge of the business. In 1922, he and his wife toured Europe. His physical condition was good, except for attacks of asthma. In June, 1923, he and his wife went to Mineral Wells, Tex., to secure treatment for asthma. His disability responded to treatment, requiring a shorter time than either he or his physician anticipated. Decedent returned to Wichita Falls to resume his business activities. In October, 1923, his wife became ill and they returned to Mineral Wells to secure treatment for her. The physician treating decedent at Mineral Wells, advised him that he had a life expectancy of 10 or 15 years. In the latter part of November, 1923, decedent contracted dengue fever and died from the same on December 3, 1923. He was 73 years of age at date of death.

### OPINION.

MILLIKEN: For the purposes of this decision, we perceive no reason for dividing the transfers made two years prior to death and those made within two years of death. All the transfers which decedent

made to his wife were in conformity with a well considered plan to provide a substantial estate for his wife and fulfill, to the fullest extent, the prenuptial promise he had made. The expectation or anticipation of death, either in the immediate or reasonably distant future, was not the moving cause of the transfers. From late in 1919, when decedent had fully recovered from an operation, until the attack of dengue fever, late in November, 1923, he was actively engaged in his various business pursuits. He had received treatment for asthma in 1923, and recovered much sooner than either he or his physician anticipated. His physician had advised him that he had a life expectancy of from 10 to 15 years.

Counsel for respondent emphasizes the age of the decedent, when some of the transfers were made in 1923. It is true, in 1923, the decedent had passed the Biblically allotted period of life. Nevertheless, taking into account the business activities in which he was engaged, together with the prophecy of his physician as to his expectancy of life, he, in common with the rest of humanity, expected to far outlive his allotted time.

We conclude that the transfers in question were not made in contemplation of death and that the evidence is amply sufficient to overcome the statutory presumption raised by section 402(c) of the Revenue Act of 1921.

*Judgment will be entered for the petitioner, on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, PHILLIPS, and VAN FOSSAN.