ANNA SERRIEN, EXECUTRIX, ESTATE OF JOHN SERRIEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8836.   Promulgated August 22, 1927.

Certain gifts made by decedent prior to his death held not to have been made in contemplation of death and certain other gifts made by decedent prior to his death held to have been made in contemplation of death.

*Harry C. Weeks, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

This proceeding involves the determination by respondent of a deficiency in estate tax of $3,984.02.   This deficiency arises from the inclusion by respondent in the gross estate of John Serrien, deceased, of certain gifts made by decedent to his children, and from the determination that certain bank stock was worth more than the value at which it was returned.   Petitioner further claims that certain notes included in the gross estate as gifts were never the property of John Serrien.

#### FINDINGS OF FACT.

The petitioner is the regularly appointed, qualified and acting independent executrix of the estate of John Serrien, deceased, who died July 23, 1923, at the age of 70 years, a resident of Wichita Falls, Tex. Decedent left surviving him his widow, Anna Serrien, and the following named children who had reached the age set opposite their respective names on the date of the hearing of this cause, March 3, 1927:

| | | | |
|---|---|---|---|
| Martha Walker | 32 | Ludwig Serrien | 25 |
| Amanda Reinert | 30 | William Serrien | 23 |
| Emma Serrien | 27 | Bertha Serrien | 22 |
| Frieda Serrien | 25 | Linda Serrien | 15 |

All the unmarried daughters remained with their father and lived with him at Wichita Falls. The married daughters and the sons were residents of the State of Kansas. The sons Ludwig and William and the daughter Amanda's husband were farmers.

The decedent, John Serrien, was, prior to 1918, a farmer and had owned and operated for many years a farm near Iowa Park, near Wichita Falls, Tex., doing his own work and performing the labors usually performed on a farm. About 27 years before his death he had the services of a physician for some minor trouble. With that exception until the occasions hereafter referred to he was not treated by a physician and was always in hale and hearty health. He was a silent, reserved, stoical man, who spoke little about his business and hardly, if ever, referred to his physical condition. He kept his affairs to himself. In 1917 or 1918 oil was discovered on his farm, from which he derived quite a large income. It became impossible for him to continue his farming in the midst of the oil operations and in 1918 he moved to Wichita Falls, where he resided until his death. In the early part of the summer of 1922, he made a trip to Wisconsin to visit his sister. His daughter Frieda followed him and they returned to Wichita Falls about September 1, 1922. Shortly after his return from Wisconsin he began to speak of pains he was suffering in the neighborhood of his stomach, but seemed to pay very little attention to the matter. In the early part of the fall of 1922 he called on Dr. Clark, a physician residing in Iowa Park, who prescribed for him a simple remedy. He of his own volition procured some salve for external application. Shortly after this and in October, 1922, he called on an old friend, J. F. Boyd, vice president of the First National Bank of Iowa Park, Tex. Boyd, observing that decedent did not seem to be feeling well, questioned him relative to his health and was informed that he was suffering at that time from a pain in his stomach. He stated that it was bothering him at the time, but did not bother him all the time. Boyd, noticing an expression of pain on his face, concluded that the decedent should consult a doctor and he advised decedent to get in touch with Dr. O. B. Kiel, of Wichita Falls. Decedent agreed and on October 20, 1922, he called on Dr. Kiel, who first examined him and then referred him to Dr. M. H. Glover for the purpose of having him X-rayed. Dr. Kiel states that at the time decedent called upon him, October 20, he was a man of fair size, weighed about 140 pounds, rather bulky and short, that he looked extremely sick at the time, was sallow, his skin was dry, his face drawn, and as he, the physician, believed, was suffering pain. The X-ray plates developed the fact that the decedent was then suffering from cancer of the stomach.

The history of decedent's case as told by him to Dr. Kiel and as it appears from a copy of Dr. Kiel's office record which was introduced in evidence, is as follows:

Until six months ago patient had always felt well. He had never had any serious illness in his life. Six months ago patient began to notice an accumulation of gas on his stomach immediately after meals. This has gradually grown worse until for the past six weeks or two months he has suffered with severe cramping spells, coming on after eating, in pit of stomach and radiating to both sides, high up, of abdomen. He is conscious of a sense of pain, although very slight at times, always. Patient does not become nauseated, and never vomits. He has lost considerable weight. His stomach becomes bloated at times. Temperature 98.6; Pulse 100; Respiration 20.

The decedent's weight then was 138 pounds; his best weight was 145 pounds. Dr. Kiel diagnosed the trouble as carcinoma of the stomach, and on October 23, 1922, informed the decedent that he had a malignant growth in his stomach, that he had no chance to get well, that while he might be offered an extension of life for a few months if he underwent an operation or by the application of either X-ray or radium, he could not be cured, and that he might live a few months, or he might live a year. This was the first information decedent received that he was suffering from a cancer or any malignant trouble. His change of condition had been so gradual that neither his wife nor his daughter Frieda, had noticed any change. Up to October 23, 1922, the decedent had pursued the same active course of life and business that he had been accustomed to theretofore. On the advice of Dr. Kiel, he then went to St. Louis to undergo an operation if the surgeons there, upon investigation, thought an operation beneficial. Upon opening up his abdomen it was discovered that he was beyond hope and he was sewed up and immediately returned home, where he lingered until his death.

All the property of the decedent was held by him and his wife in community. The discovery of oil on his farm materially enhanced his financial condition. At the date of his death respondent valued his gross estate at $373,710.11. This amount included transfers of community property which he had previously made and which respondent included in his gross estate at the value of $75,578. The following table shows all the transfers included by respondent in the gross estate of decedent, the date on which the transfers were made, the property transferred, the value of the property transferred at date of decedent's death, and the child to whom the transfer was made.

| Date | Property | To whom transferred | Valuation |
|---|---|---|---|
| Nov. 1, 1920 | Note of S. A. Hanneman<br>Interest | Frieda Serrien | $4,500.00<br>196.50 |
| Nov. 1, 1920 | Note of W. H. Hanneman<br>Interest | Frieda Serrien | 5,500.00<br>240.17 |
| Nov. 1, 1920 | Note of C. H. Lonberger<br>Interest | Frieda Serrien | 4,000.00<br>174.67 |
| Nov. 26, 1920 | Land, Lincoln County, Kans | Willie L. Reinert | 11,200.00 |
| Dec 1, 1920 | Note of R. O. Hanneman<br>Interest | Emma Serrien | 7,500.00<br>290.00 |
| Dec. 1, 1920 | Note of W. E. Lyne<br>Interest | Martha Walker | 5,000.00<br>193.33 |
| Dec. 1, 1920 | Note of E. C. Walters<br>Interest | Bertha Serrien | 15,500.00<br>586.42 |
| Jan 1, 1921 | Note of Louis Lessor<br>Interest | Emma Serrien | 3,400.00<br>114.47 |
| Jan. 2, 1921 | Note of Charles J. Panser<br>Interest | Amanda Reinert | 2,000.00<br>67.00 |
| | | | 60,462.56 |
| Dec. 6, 1921 | Note of E. C. Walters<br>Interest | Emma Serrien | 3,500.00<br>132.42 |
| Feb. 9, 1922 | Note of A. W. Cheney<br>Interest | Frieda Serrien | 8,100.00<br>222.75 |
| May 9, 1922 | Land, Lincoln County, Kansas | Ludwig Serrien | 18,000.00 |
| | | | 29,955.17 |
| Oct. 26, 1922 | Note of Jefferson Louder<br>Interest | Amanda Reinert | 3,000.00<br>133.50 |
| Oct. 28, 1922 | Land, Lincoln County, Kansas | William F. Serrien | 12,500.00 |
| Nov. 1, 1922 | Note of Sophia Gottbert<br>Interest | Frieda Serrien | 1,000.00<br>43.67 |
| Dec. 4, 1922 | Note of W. E. Panser<br>Interest | Bertha Serrien | 1,200.00<br>45.80 |
| Jan. 1, 1923 | Note of Grathe Wollison<br>Interest | Frieda Serrien | 2,000.00<br>67.33 |
| Jan. 5, 1923 | Note of F. W. Huhl<br>Interest | Emma Serrien | 700.00<br>23.10 |
| Jan. 14, 1923 | Note of Augusta Stussey<br>Interest | Martha Walker | 2,800.00<br>88.20 |
| May 1, 1923 | Note of C. D. Bra<br>Interest | William F. Serrien | 7,500.00<br>102.50 |
| May 25, 1923 | Note of P. C. Jensen<br>Interest | Linda Serrien | 20,000.00<br>193.33 |
| June 14, 1923 | Note of John A. Schmidt<br>Interest | Bertha Serrien | 6,000.00<br>39.00 |
| July 14, 1923 | Note of Fred B. Stussey<br>Interest | Martha Walker | 3,300.00<br>3.30 |
| | | | 60,739.73 |

All the above transfers, except the four notes hereafter referred to, were gifts by the testator to his respective children. One-half the value of each transfer was included by respondent in the decedent's gross estate.

In the latter part of the summer or early part of the fall of 1922, decedent's son William F. Serrien requested his father to buy him a farm. William was then residing in Kansas. Decedent's brother-in-law, Charles C. Hildebrandt, owned a quarter section in Kansas, which he desired to sell. After negotiations the purchase price was fixed at $12,500, and on October 21, 1922, the decedent drew his check for $12,500 to the order of Charles Hildebrandt and forwarded it to Kansas in order that the trade might be closed. Hildebrandt

executed and delivered his deed to William F. Serrien on October 28, 1922. This is the tract of land referred to in the above table under date of October 28, 1922.

The note of Sophia Gottbert, dated November 1, 1922, payable to Frieda Serrien, the note of W. E. Panser, dated December 4, 1922, payable to Bertha Serrien, the note of Grathe Wollison, dated January 1, 1923, payable to Frieda Serrien, and the note of F. W. Huhl, dated January 5, 1923, payable to Emma Serrien were notes given for money borrowed from Frieda Serrien, Bertha Serrien and Emma Serrien, respectively. The money lent on these notes was the money of the above named children in which the decedent had no interest. The note of P. C. Jensen for $20,000, dated May 25, 1923, in favor of Linda Serrien, was executed in this form at the suggestion of decedent's wife, in which he concurred. The reason for this gift was that although the decedent had made gifts to all his other children, he had made none to Linda.

All the notes which are the subject matter of the gifts by decedent to his children were lien notes, and in each case the note was at his instance made payable to the child to whom the gift was made.

John Serrien, the decedent, was the owner of shares of stock in the Farmers State Bank of Burkburnett, Tex. He owned 30 shares of stock at date of his death, of the par value of $100 per share. The financial condition of that bank as of July 23, 1923, was as follows:

| RESOURCES | | LIABILITIES | |
|---|---|---|---|
| Loans and discount | $526,801.02 | Capital stock | $75,000.00 |
| Overdrafts | 2,676.06 | Surplus | 25,000.00 |
| Liberty bonds | 38,150.00 | Undivided profits | 9,718.39 |
| U. S. Treasury certificates | 1,819.80 | Deposits | 677,852.70 |
| Building | 15,000.00 | | |
| Furniture and fixtures | 10,000.00 | | |
| Interest in depositors' guaranty fund | 10,995.21 | | |
| Assessment in depositors' guaranty fund | 38,957.79 | | |
| Other real estate | 12,676.05 | | |
| Bills of acceptance | 19,977.50 | | |
| Cash and exchange | 110,517.67 | | |
| Total | 787,571.10 | Total | 787,571.10 |

The furniture and fixtures which are included in the resources at a valuation of $10,000 were not worth over $2,500. The items included in the resources of $10,995.21, representing interest in depositors' guaranty fund and $38,957.79, representing assessment in the guaranty fund were at that time seriously impaired. The territory tributary to this bank was in July, 1923, recovering from the results of an oil boom and the loans and discounts of the bank represented paper, some of which was not worth its face value, at which value it was included in the resources of the bank. No dividend had been

declared subsequent to January 1, 1922. No stock was sold during the year 1923. The value of the stock was par at date of death of decedent.

OPINION.

MILLIKEN: Respondent has included in the gross estate of John Serrien, hereafter referred to as decedent, property which he had prior to his death given to his children, and also certain other property which respondent claims decedent gave to his children but which petitioner claims was their individual property. The total value of the property thus included was $75,578.73. Respondent proceeded under section 402 of the Revenue Act of 1921, which in part reads:

SEC. 402. That the value of the gross estate of the decedent shall be deter-mined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

*    *    *    *    *    *    *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The question presented is whether decedent made the various gifts to his children " in contemplation of death " as those words are used in the statute. There is also involved a further question whether certain of the notes represented money which was the property of decedent. In *Spreckels* v. *State*, 30 Cal. App. 363; 158 Pac. 549, the court said with reference to the term " in contemplation of death ":

The language referred to was not intended to include that general expectation of death which is the essential concomitant of the inherent knowledge of the inevitable termination of all life, and which is in the young and physically robust as well as in the aged and the infirm. No similar statute has been so construed. A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death that the property so transferred becomes amenable to the burden; or, as counsel for the respondent with singular aptness states the proposition:

" It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax."

The above excerpt was quoted with approval in *Appeal of Spencer Borden, Jr., Executor*, 6 B. T. A. 255. See also *Appeal of Philip T. Starck, Executor*, 3 B. T. A. 514.

The gifts made by decedent fall into three classes—first, those made more than two years prior to his death; second, those made within two years of his death, but prior to October 23, 1922, the date on which he was first informed of the nature of his malady, and the fact that he could not expect to live more than a year; and, third, gifts made after that date.

It is shown by the record of Dr. Kiel that decedent never had a serious illness in his life prior to his then present trouble and that he had felt well until six months prior to examination which took place October 20, 1922. This fixes the date decedent first experienced discomfort at about April 20, 1922. These facts dispose of all the gifts made prior to April 20, 1922. It is clear beyond a doubt that prior to that date decedent was not contemplating death except like all mortals he knew that sooner or later he must pass over the river. No gifts prior to that date were made " in contemplation of death " as that term is used in the statute. The only gift made after April 20, 1922, and before decedent was examined by Dr. Kiel was the gift of the farm to his son Ludwig. This gift was consummated on May 29, 1922, or only about one month after decedent first experienced any trouble with his stomach. At first this trouble was an accumulation of gas on the stomach. This grew gradually worse. The matter was considered of such minor importance that decedent did not employ a physician until the early part of the autumn of 1922. Again, we are of opinion that the gift of the farm to Ludwig was not made in contemplation of death and should not be included in decedent's gross estate.

When we come to the gifts made after October 23, 1922, a more difficult question is presented. At the outset, however, we point out that the note of Sophia Gottbert, dated November 1, 1922, and the note of Grathe Wollison, dated January 1, 1923, represented money loaned by Frieda Serrien; that the note of W. E. Panser, dated December 4, 1922, represented money loaned by Bertha Serrien, and that the note of F. W. Huhl, dated January 5, 1923, represented money loaned by Emma Serrien. These children had accumulated money from payments made as interest and on the principal of their first gifts. These amounts were reinvested in these four notes. These notes were not a part of decedent's estate.

The land given to William Serrien was situated in Lincoln County, Kansas. The grantor, Hildebrandt, lived in that county. Decedent was at the time of the transaction at his home in Wichita Falls, Tex. The deed from Hildebrandt to William Serrien was executed and delivered on October 28, 1922. Decedent executed and forwarded his check for the purchase money on October 21, 1922, or the day after he consulted Dr. Kiel and two days before he became aware

of the seriousness of his physical condition. It is shown that William had requested his father to give him a farm just as he had given a farm to his son Ludwig, and that after it had been discovered that Hildebrandt was willing to sell his place there had been chaffering about the price. It thus appears that decedent had reached a determination to give a farm to William before he had seen Dr. Kiel and that the gift was the result of plans laid before he knew he was suffering from a malignant disease. Up to the time he consulted Dr. Kiel he had been leading an active business life. He came and went as he had always done. While he was suffering pain he had no conception that it arose from anything other than a disordered stomach. Although he had at first felt inconvenienced and subsequently suffered pain, his weight on October 20, 1922, was only seven pounds under his best weight. He had bought and applied a salve and consulted a country physician, the first he had consulted in 27 years. He went to Dr. Kiel only after he had been so advised by an old friend who appears to have realized far more than the decedent his need of a thorough examination. Under these circumstances, it can not be held that on October 21, 1922, the date on which the check was sent, decedent thought he was suffering from a malady which would shorten his life. Besides, this purpose had matured prior to that date. The testimony discloses that the first time this man was brought to a realization of his condition was on October 23, 1922. We are of opinion that respondent erred in including in the gross estate of decedent the farm given to William Serrien.

With respect to remaining gifts made after October 23, 1922, petitioner stoutly contends that they were made in continuation of a policy which had been inaugurated long before and that decedent was actuated only by the same motives which impelled him to make the gifts which he had made when he felt himself to be a perfectly well man. Petitioner relies on *Spreckels* v. *State, supra,* where it was said " It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax." It is contended that the same motive was behind both the earlier and later transfers. We can not agree that petitioner has established this contention. The law presumes that these transfers were made in contemplation of death. Petitioner has not overcome this presumption. We do not know what decedent thought or what was his actuating motive. He was a reticent man. Our attention is invited to the fact that decedent's wife suggested the gift of the $20,000 note to Linda. This gift was made less than two months before his death and when he knew not only that his days were numbered but that the end was very near. Besides, the purpose

of the gift was to equalize Linda with the other children and thus was of a testamentary nature. It would require exceptionally strong testimony to establish that a person who knew that his death was only a matter of months made gifts without taking that fact into serious consideration. There is no such testimony in the record. We are of opinion, therefore, that with the exception of the farm which was given to William, respondent did not err in including in the gross estate of decedent all the remaining gifts made after October 23, 1922.

> *Judgment will be entered after 15 days' notice, under Rule 50.*

Considered by Marquette, Phillips, and Van Fossan.