FARMERS BANK & TRUST CO., EXECUTOR, ESTATE OF HIRAM F. HAMMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10914.  Promulgated January 20, 1928.

*William S. Hammers, Esq.*, for the petitioner.
*R. E. Copes, Esq.*, and *L. S. Pendleton, Esq.*, for the respondent.

44

OPINION.

LOVE: The petitioner's first contention is that the property comprising the corpus of the trust, the value of which was included in decedent's gross estate by the Commissioner, was erroneously included therein for the reason that the title and all beneficial interest in the corpus of the trust had finally and irrevocably passed from the decedent under the declaration of trust dated March 22, 1917, and under the assignment to the trustees dated the same date. And, it is further contended in this respect that as the trust was created by the decedent on March 22, 1917, more than two years before his death on November 15, 1922, there is no presumption that such trust was made in contemplation of death or to take effect in possession or enjoyment at or after death, and that the burden of proving that such trust was so made is on the Commissioner.

The Commissioner, however, in determining the gross estate included therein the value of the corpus of the trust declared April 1, 1922, to wit, $129,721.11.

The petitioner in making its first contention does so upon the theory that in declaring the trust of April 1, 1922, the decedent merely exercised the right to continue the trust declared March 22, 1917, which right was reserved therein. It is clear that if the trust of April 1, 1922, was not a continuation of the trust of March 22, 1917, we do not have before us any question with respect to the trust first in point of time. In other words, if the first trust is not before us for consideration of the question as to whether it was in fact

made in contemplation of death or to take effect in possession at or after death, then we need not discuss the petitioner's contention with respect to the burden of proof.

The trust instruments of March 22, 1917, and April 1, 1922, show upon their faces that the second is not a continuation of the first, as the petitioner contends. The instruments contain substantially different provisions. *The corpus of the second trust is entirely different from that of the first.* It will be observed that the securities comprising the corpus of the trust of April 1, 1922, are not the securities comprising the corpus of the trust of March 22, 1917.

The record does not contain one word of explanation concerning this apparent difference between the two trusts. We do not know and we can not assume that the corpus of the second trust represents merely the reinvested corpus of the first. On the record, we can only hold that the trust of April 1, 1922, is not a continuation of the trust of March 22, 1917. Consequently, we are not now concerned with the circumstances surrounding the making of the trust of March 22, 1917. We must consider, therefore, the question presented with respect to the trust created on April 1, 1922.

Section 402 (c) of the Revenue Act of 1921 provides—

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

 \*          \*          \*          \*          \*          \*          \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

It is clear, therefore, that the Commissioner having determined that the trust was made in contemplation of death, the burden of proof is on the petitioner in this respect, and in addition there is the statutory presumption. *See Wickwire* v. *Reinecke,* 275 U. S. 101.

We are not concerned with the question as to whether the trust of April 1, 1922, was intended to take effect in possession or enjoyment at or after decedent's death for the reason that his death had no effect whatever upon possession or enjoyment of the trust property. The time for distributing the trust was fixed irrespective of the time of decedent's death.

As above stated, in addition to the statutory presumption that it was so made, there is the Commissioner's determination that the

trust of April 1, 1922, was made in contemplation of death. The petitioner, therefore, must sustain the burden of proof in showing that the trust was *not* made in contemplation of death. In determining whether such was the case, we are, of course, bound by such facts relative thereto as are disclosed by the record.

All of the evidence in the record bearing upon the question as to whether the trust of April 1, 1922, was made in contemplation of death is the testimony of the vice president and trust officer of the petitioner, who did not disclose how long and how intimately he had known, or how often he had seen, the deceased. His testimony is quoted.

#### DIRECT EXAMINATION.

Q. What was the age of Mr. Hammon at the time of his death?

A. About 83, I believe.

Q. Do you know personally what his general condition was?

A. His general condition up to the time of his death was very good.

Q. Was he active in attending to business previous to that time?

A. He was. I mean by that up to about two days before he died.

Q. Do you know the cause of his death?

A. No, I do not. I know that he couldn't retain any nourishment just before he died.

#### CROSS EXAMINATION.

Q. Mr. Morris, you testified, I believe, that at the date of death of Mr. H. F. Hammon he was 83 years of age? And at the date of the first trust in 1917 he would have been approximately 77?

A. Approximately.

Q. Did you ever hear him discuss his motive for providing for an extension of this trust for five years?

A. I did.

Q. What explanation have you to make?

A. The main reason for his extending the trust was for his not wanting the beneficiaries to come into possession of the principal, as it was his opinion they would soon squander it. Consequently he extended the trust continuing the monthly payments.

Q. Did he intimate that he wanted this trust to continue as long as he lived?

A. No.

Q. Now, about the state of his health. When you stated his condition was good, did you mean it was good for a man of his age?

A. His health was always extremely good for a man of his age.

Q. Did you ever know of any chronic disease that he had?

A. I never knew him to have a sick day during my entire acquaintance with him.

From the foregoing it is obvious that we are not informed as to the decedent's motives for making the trust of March 22, 1917, but even were we so informed, the motivating influence present at that time may not have been the same as that present at the making of the second and new trust of April 1, 1922. It is possible that on April 1, 1922, the decedent wished to postpone any payment to the

beneficiaries but at the same time the second trust may have been made in contemplation of death as used in the statutory sense.

The only testimony we have, therefore, with respect to the circumstances surrounding the creation of the trust of April 1, 1922, is to the effect that the decedent had not been ill and was in good health for a person of his age. However, as before pointed out, this testimony was given by one whose qualifications are not shown. And in this connection it should be observed that the witness did not know the cause of the decedent's death.

We are of the opinion, therefore, that the petitioner by the evidence adduced has failed to overcome the statutory presumption that the trust was made in contemplation of death or to sustain the burden of proof placed on it by the Commissioner's determination. Accordingly, we approve the Commissioner's action in including in decedent's gross estate the value of the trust of April 1, 1922, to wit, $129,721.11.

The petitioner's next contention is that the amount of $4,305 interest collected from the trust in question by decedent and credited to his personal account, belonged to the trust and should be included therein.

Having decided that the trust from which the interest was collected by decedent should be included in the gross estate, it follows that the accrued interest would also be included in the gross estate. The petitioner's contention can not be sustained for this reason. However, as will be observed from the findings of fact, decedent collected the interest from the trust and paid the beneficiaries a larger sum. This, *for an added reason*, would defeat petitioner's contention with respect to the interest in question. We approve, therefore, the Commissioner's action in including $4,305 interest collected from the trust in the gross estate.

The petitioner's third contention is that the Commissioner erred in including in the gross estate the value of the contract between decedent and Hardin for the reason that the amount owing thereunder was uncollectible.

The evidence fails to establish that the debt under the contract was worthless. We think that it is shown that the petitioner placed a value on the contract of $2,000 and, therefore, we hold that amount to be its value as of the time of decedent's death.

However, the Commissioner admits that he determined the value of the contract to be $13,256.24 as of time of decedent's death and that he included in the gross estate that amount. Accordingly, the gross estate should be reduced $11,256.24 in respect of this item.

The last contention advanced by the petitioner is that the Commissioner erred in disallowing a deduction of $1,500, which amount

it paid on November 29, 1922, on account of the trust instrument of May 31, 1922, whereby decedent obligated himself during his lifetime, and his estate after his death, to pay expenses on a certain development, not in excess of $3,000 monthly.

We are unable to determine from the record the nature of the alleged expenses incurred in connection with the development of the property under the trust of May 31, 1922. It is apparent, of course, that if the money advanced was expended for purposes other than ordinary maintenance and upkeep of the farm in question, such expenditures would be capital expenditures in their nature. The word " development " places us on notice to scrutinize closely the expenditures made in connection therewith.

The petitioner having failed to produce any evidence with respect to ultimate disposition of the amount in question, we can only approve the Commissioner's determination in disallowing as a deduction from the gross estate the amount of $1,500, alleged to represent a deductible expense.

*Judgment will be entered on 15 days' notice, under Rule 50.*