Moss, Judge,
delivered the opinion of the court:
Plaintiff, John L. Mimnaugh, jr., executor of the will of John L. Mimnaugh, deceased, filed an estate-tax return for the estate of decedent and paid on the net value of said estate the tax shown to be due thereon of $65,994.45. Thereafter the Commissioner of Internal Revenue assessed against said estate an additional tax of $44,077.36, which was paid. Plaintiff filed a claim for refund in the sum of $41,257.36, which was rejected. This action is for the recovery of said amount.
The basis of plaintiff’s claim is the alleged error of the commissioner in the valuation placed upon three certain parcels of real estate and upon the value of certain miscellaneous property, and also upon the value of 350 shares of stock in the Palmetto National Bank; and upon the further ground that the commissioner erroneously included in the gross estate the amount of the proceeds of life insurance paid on policies taken out by plaintiff’s decedent on his own life.
The parcel of real estate located on the northwest corner of Main and Hampton Streets, Columbia, South Carolina, *415 known as the store property, was valued by the executor in his return at $151,-500., and by the commissioner at $300,000; the property located at the southeast corner of said streets, known as the hotel property, was valued by the executor at $151,500, and was increased by the commissioner to $250,000; and the parcel located at the southwest corner of Blanding and Barnwell Streets was valued by the executor at $15,000, and was increased by the commissioner to $20,000.
The executor returned the shares of stock in the Palmetto National Bank as of no value, and the commissioner determined its value to be $59,500. The miscellaneous property referred to, consisting of stock of merchandise, fixtures in storeroom, accounts due, delivery trucks, and other personal property, was valued by the executor at $105,186.25, and was increased by the commissioner to $225,000.
In computing the value of the. gross estate the commissioner included the proceeds of certain life insurance policies aggregating $50,000, which plaintiff contends was error.
At the recent hearing of this case, the question having arisen as to the jurisdiction of this court to inquire into the action of the commissioner in determining the value of property for the purpose of computing the estate tax, counsel for the parties hereto were requested by the court to file briefs on that subject, and they have done so. Whatever doubt may have existed on this point, it seems now from an examination of the authorities cited by counsel on both sides to be a settled principle that the courts have jurisdiction to review the determination of the commissioner on the question of the value of property for purposes of taxation. The Department of Justice has consistently followed the rule that the commissioner’s findings in this respect are only prima facie correct and are not conclusive on the courts. Inasmuch as the parties are in agreement on this point, no further discussion of the question will be indulged.
The two larger parcels of property known as the store property and the hotel .property were each valued in the return at $157,500. Plaintiff’s own evidence establishes a value for the store property of not less than $262,500 and for the hotel property not less than $210,000. As to all *416 three parcels of real estate, and as to the miscellaneous personal property, the evidence amply sustains the values determined by the commissioner.
The commissioner determined the value of the Palmetto National Bank stock to be $170 per share. Plaintiff contends that said stock had no value as of the date of the death of the testator, January 9, 1921. The Palmetto National Bank failed in July, 1923, some two and one-half years after the death of plaintiff’s decedent, and its assets and liabilities were taken over by the Columbia National Bank, and its entire surplus and capital, amounting to $1,256,000, were at once charged off. There was much worthless paper in the assets of the bank. Stockholders of the Columbia National Bank contributed $250,000 to cover the losses of the defunct bank. Later a further assessment of $500,000 was made against said stockholders. From these facts concerning the condition of its affairs in July, 1923, it was the conclusion of plaintiff’s chief witness on that subject that the stock had no value in January, 1921. It appears, however, that the appraisers appointed by the probate court of the county of decedent’s residence valued said stock at $52,500 for the 350 shares as of February 28,1921, and other evidence shows that sales of such stock were made at $170 on or about January 9, 1921. Said stock was not listed on any stock exchange. In computing the gross value of decedent’s estate the commissioner determined the value of said stock to be $59,500. It is the contention of plaintiff that it had no value. The burden is on plaintiff to prove its contention. The evidence does not establish plaintiff’s claim that it had no value, nor is it satisfactorily shown that it had a less value than that determined by the commissioner.
The remaining question for consideration is the contention of plaintiff that the proceeds of certain policies of life insurance on the life of plaintiff’s decedent amounting to $50,000 should not have been included in the gross estate by the commissioner in computing the value of said gross estate. In support of this contention plaintiff relies wholly upon the decision of the United States Supreme Court in the case of Lewellyn v. Frick, 268 U. S. 238, plaintiff’s contention being that the court in that case held that life insurance *417 taken out before the passage of any estate tax law may not properly be included in the gross estate. The question in this case is clearly distinguishable from that involved in the Frick case. In that case there were outstanding at the time of the death of the testator, Henry C. Frick, 11 policies of insurance upon his life, four of which were payable to his wife, and seven to his daughter. The following facts with reference to said policies were agreed:
“ Henry C. Frick died on December 2, 1919, and his will was admitted to probate on December 6. There were outstanding policies upon his life, four payable to his wife and seven to his daughter. The total amount received under them was $474,629.52, and as his estate apart from this was more than ten million dollars, an additional tax of $108,657.88, or twenty-five per cent of the sum received less the statutory deduction of $40,000, was required to be paid. All the policies were taken out before the revenue act was passed. The largest one, for $114,000, was a paid-up policy issued in 1901, payable to Mrs. Frick without power in Mr. Frick to change the beneficiary. Another, similar so far as material, was for $50,000. Others were assigned or the beneficiary named (Frick’s estate) was changed to Frick’s wife or daughter before the date of the statute. All premiums were paid by Mr. Frick, and some seem to have been paid after the statute went into force.”
Plaintiff’s contention is obviously based upon what we conceive to be a misconception of the meaning of certain language appearing in the opinion of the court in that case, to wit:
“ Not only are such doubts avoided by construing the statute as referring only to transactions taking place after it was passed, but the general principle ‘ that the laws are not to be considered as applying to cases which arose before their passage ’ is preserved, when to disregard it would be to impose an unexpected liability that if known might have induced those concerned to avoid it and to use their money in other ways.” (Our italics.)
The “ transactions taking place after it was passed ” obviously refer to transactions with respect to the policies after they were taken out. In that case it was sought to impose the estate tax upon life insurance on the life of the testator, payable, either by original contract or by assignment, to the *418 wife and daughter. The testator, prior to the enactment of any estate tax act, had divested himself and his estate of every vestige of interest in said policies or the proceeds thereof, and these are the transactions which the court was considering when it used the language quoted above. In the present case the policies were all payable to the estate of the decedent, and the proceeds thereof in the hands of his executor were, under the provisions of section 402 (a) of the revenue act of 1918, 40 Stat. 1057, “ subject to the payment of the charges against his estate, and the expenses of its administration, and * * * subject to distribution as part of his estate.” The principle that the proceeds of life insurance payable to a decedent or his estate constitute assets of the estate seems to be well settled. It has been held that even when the policy is payable to a beneficiary, the proceeds of such policy are still assets of the estate if the decedent has reserved the power to change the beneficiary. Cohen v. Samuels, 245 U. S. 50; Gaither v. Miles, 268 Fed. 692; Knoedler's Estate, 140 N. Y. 377, 35 N. E. 601; Voorhees’ Estate, 193 N. Y. Supp. 171. Other cases to the same effect are cited in defendant’s brief. We are of the opinion that the proceeds of the insurance policies involved herein were properly included by the commissioner in the gross estate of plaintiff’s decedent. It follows from the views hereinabove expressed that the plaintiff’s petition must be dismissed. It is so adjudged and ordered.
Sinnott, Judge; Geeen, Judge; GRAham, Judge; and Booth, Chief Justice, concur.