# 218

GEORGE HEIPERSHAUSEN AND PHILLIP HEIPERSHAUSEN, EXECUTORS, ESTATE OF PHILLIP HEIPERSHAUSEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24911.   Promulgated November 14, 1929.

*Ferdinand Tannenbaum, Esq.*, for the petitioners.
*J. E. Marshall, Esq.*, for the respondent.

### OPINION.

STERNHAGEN: Petitioners contend that the transfer was not motivated by the fear that death was near at hand and that it was merely made in fulfillment of a long standing promise of decedent to give his sons an interest in the business. Since the transfer was absolute, there is involved no question of whether the transfer was one intended to take effect in possession or enjoyment at or after death. *Sadie S. Davis, Executrix*, 9 B. T. A. 1212. The transfer in question was made without a fair consideration in money or money's

worth and within two years prior to the death of the decedent, and, under the statute, section 402(c), Revenue Act of 1921, is presumed to have been made in contemplation of death. The estate has the burden of proving the contrary by affirmative evidence. *C. D. Lehman, Executor,* 6 B. T. A. 791. "'Contemplation of death' as used in the statute, is an apprehension of death within the reasonably near future, arising from some existing bodily condition, and not the general expectation of death entertained by everyone. Contemplation of death must be the motive prompting the transfer of property." *Hannah M. Spofford, Administratrix,* 3 B. T. A. 1016, 1020. See *United States Trust Co. of New York, Executor,* 14 B. T. A. 312, and cases cited. It is necessary to establish that, at the time of the transfer, the decedent did not have a " present apprehension arising from his physical condition, which created a reasonable fear that death was near at hand " and that such apprehension was not the " direct and animating cause of the transfer." *Anna L. Stark Lavelle, Executrix,* 8 B. T. A. 1150. See also *George Snyder Crilly et al., Executors,* 15 B. T. A. 389, and cases cited. As was said in *Fidelity-Philadelphia Trust Co., Executor,* 17 B. T. A. 910:

This presumption shifts the burden of proof to the taxpayer, but rigorous rules as to the proof required to rebut the presumption are not to be applied. *Myer* v. *United States,* 60 Ct. Cls. 474; *Anna L. Stark Lavelle, Executrix,* 8 B. T. A. 1150, 1156. If the preponderance of the evidence leads to the conclusion that a present apprehension that death was near at hand was not the animating and inducing cause of the transfer, then the presumption is rebutted and the value of the corpus of the estate should not be included in the gross estate. *Philip T. Starck, Executor,* 3 B. T. A. 514; *Spencer Borden, Executor,* 6 B. T. A. 255; *Anna L. Starck Lavelle, Executrix, supra; Rea* v. *Heiner,* 6 Fed. (2d) 389.

While an affirmative showing that the decedent's action was induced by some motive other than contemplation of death is necessary to rebut the statutory presumption, *United States Trust Co. of New York, Executor, supra,* it is not necessary that " contemplation of death be the sole cause of the gift; it is sufficient to subject the property to tax if this was the motivating cause." *John A. Loetscher et al., Executors,* 14 B. T. A. 228, 230. The Board has held the statutory presumption to have been overcome where it appeared that the motivating cause was the effectuation of a particular nontestamentary purpose or a promise previously made, and the evidence was clear that, at the time of the transfer, the decedent entertained no fear of death in the reasonably near future. See, for example, *Sadie S. Davis, Executrix,* 9 B. T. A. 1212—to provide an income for a daughter during decedent's lifetime; *Estate of John A. Hicks,* 9 B. T. A. 1226—to give sons an interest in a corporation in the affairs of which they had long taken an active part; *Mary*

*Walker Boggs, Executrix*, 11 B. T. A. 824—to carry out a prenuptial promise to provide an independent income for a wife.

In determining whether a transfer was made in contemplation of death " the Board must look to the expressions of the decedent, to the outward visible acts and circumstances surrounding a transfer of property prior to death." *Philip T. Starck, Executor*, 3 B. T. A. 514, 517. " We must seek our conclusion from evidence of the facts in connection with and leading up to the transfer, and the physical condition and state of mind of the decedent at the time." *United States Trust Co. of New York, Executor, supra*, p. 317.

During the five years preceding his death, the decedent was not a well man; during the first half of that period he went to his place of business daily and remained a few hours to observe what was being done, and this activity lessened thereafter and was upon medical advice discontinued about a year before decedent's death. The transfer was made at a time when his visits had been discontinued. While the decedent did not actively participate in the management of the business during the last year of his life, he was up every day, did not require nursing or constant attention, and went out driving. It is true he was inactive, in business as well as in other ways, at the time of the transfer, and that his physician visited him once or twice a week. However, these facts are adequately explained by evidence that he was advised to lead a quiet life; that the physician was never called in an emergency, except at the time of his death; that decedent's wife requested the physician to call once or twice a week, whenever he thought it necessary, as decedent " took a great fancy " to the physician and she thought she needed the physician's help to keep the decedent from being more active; that the physician prescribed the usual heart remedies; and that decedent would be " in better spirits " by reason of the physician's attempts " to buoy him up."

The decedent was not strong. He had a chronic heart condition which had existed for several years before April 1, 1921, and there was no perceptible change in his physical condition from April 1, 1921, until he died. Up to the time of the heart attack which resulted in death, decedent had never had a heart attack; while there was a possibility of sudden death, the condition of decedent was not one which would ordinarily result in death in the very near future. Considering his age, he might have lived five or ten years longer.

The decedent was informed by his physician that he had a muscular weakness of the heart and was advised to lead a quiet and inactive life and avoid excitement. He was of a cheerful disposition and was not melancholy or depressed, rarely complained of the condition of his health and never discussed his age or physical condition; he never

spoke of death, looked forward to becoming active, and frequently spoke of his hope of going to his place of business.

The decedent and his partner simultaneously transferred an equal amount of stock to their sons one month after incorporation of the business; and it is clearly shown that the stock here in issue was tranferred in fulfillment of a promise, made fifteen years before death and repeated from time to time thereafter, to give the donees an interest in the business; that the donees had served the business for many years, and that decedent expressly stated at the time of the transfer that the transfer was made in fulfillment of his promise and in view of the many years of service rendered to the business by the donees.

The evidence respecting the decedent's condition, his knowledge of the nature of his ailment, the extent of his activities, and his state of mind, together with the existence of a long standing promise and the contemporaneous declaration that the transfer was made in fulfillment of that promise, leads to the conclusion that, at the time of the transfer, the decedent had no apprehension of death in the reasonably near future which was the direct and animating cause of the transfer. See *Robert P. Goldman et al., Executors*, 11 B. T. A. 92; *Isaac Gimbel et al., Executors*, 11 B. T. A. 214; *W. T. White et al., Executors*, 15 B. T. A. 470. Upon all the evidence, we have found as a fact that the transfer was not made in contemplation of death.

The petitioners alleged error in the disallowance of a claim of $3,500 for attorneys' fees paid by the executors for services rendered the estate. At the hearing the petitioners proved payments to the extent of $2,450, which the respondent admitted, and waiver their claim for the remainder. The petitioners therefore are entitled to a deduction for this item in the amount of $2,450.

*Judgment will be entered under Rule 50.*