R. B. White, Executor, Estate of John B. White, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 31246. Promulgated November 29, 1930.

*W. W. Spalding, Esq.*, and *Jesse Andrews, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

508

### OPINION.

TRAMMELL: All issues raised by the pleadings respecting valuations and the allowance of a deduction for attorneys' fees have been settled by stipulation of the parties, and the stipulated facts embodied in our findings of fact, above. The sole issue remaining for decision here is whether or not the gifts made by the decedent to his wife and

children under the instrument of March 7, 1922, and the gift of the home and its furnishings made by decedent to his wife on March 21, 1922, were made in contemplation of death, within the meaning of Title IV of the Revenue Act of 1921.

In *United States Trust Co. of New York, Executor*, 14 B. T. A. 312, we said, in referring to section 402 (c) of the Revenue Act of 1921:

This provision * * * has been before the Board and the courts in many cases and the construction uniformly applied is that by the term "contemplation of death" is meant an apprehension of death within the reasonably near future from some existing bodily or mental condition, and not the general expectation of ultimate death entertained by everyone and that such contemplation of death must be the motive which prompted the transfer and without which the transfer would not have been made, in order to include the transferred property in the estate of the decedent subject to tax.

See also the following: *Philip T. Starck, Executor*, 3 B. T. A. 514; *Spencer Borden, Jr., Executor*, 6 B. T. A. 255; *Estate of Charlotte C. Lozier*, 7 B. T. A. 1050; *Isaac Gimbel et al., Executors*, 11 B. T. A. 214; *Illinois Merchants Trust Co., Executor*, 12 B. T. A. 818; *Cyrus H. McCormick et al., Executors*, 13 B. T. A. 423; *George Snyder Crilly et al., Executors*, 15 B. T. A. 389; *W. T. White et al., Executors*, 15 B. T. A. 470; *William L. Nevin, Executor*, 16 B. T. A. 15; *Fidelity-Philadelphia Trust Co., Executor*, 17 B. T. A. 910. Also, see *Rea* v. *Heiner*, 6 Fed. (2d) 389; *Flannery* v. *Willcuts*, 25 Fed. (2d) 951; *Meyer* v. *United States*, 60 Ct. Cls. 474.

Applying the foregoing principles of law to the facts in this case, we encounter no difficulty in reaching the conclusion that the gifts in question were not made in contemplation of death, within the meaning of the statute. We search the record in vain to find any evidence indicating that at the time decedent made the gifts to the members of his family in March, 1922, there was then present in his mind any apprehension or any reasonable cause for apprehension of impending death from any existing bodily or mental condition, nor is there any evidence that he was moved to make the gifts because of any reasonable fear that his death was near at hand. On the contrary, there are abundant facts established by the uncontradicted testimony to show that the decedent in making these gifts was in no wise motivated by any consideration of early death.

The decedent was a man of optimistic and cheerful nature, and never discussed the possibility of death with his friends, his family, or his doctors. Prior to the making of the gifts in March, 1922, the last serious illness of the decedent occurred in May, 1919, when he had an attack of acute indigestion at West Eminence, Mo.

During the period from May, 1919, to October, 1922, the beginning of decedent's last illness, he suffered only minor ailments and his

physical and mental condition in general remained unchanged. This was particularly true during the months of February and March, 1922. His health was as good as it might be expected in a man of his age. There was no condition known to his doctors—and from this fact we may assume there was none known to himself—which would reasonably justify a belief that he would not live for an indefinite time, according to his life expectancy.

During the concluding years of his life, and in fact up to the very beginning of his fatal illness in October, 1922, decedent is shown to have been very active in the management of his extensive and varied business interests, and was planning the conduct of matters far into the future. He spent much time in traveling about the country, and up to the last, maintained a firm control of the numerous corporations in which he was interested.

Decedent's death in January, 1923, was due primarily and directly to uremic poisoning resulting from an enlarged prostate, the first symptoms of which were manifested in October, 1922. It was in that month that his physician visited him professionally at his home for the first time. The doctor recommended that decedent go to the hospital for a more complete examination than could be made in his home, but expressed the opinion that it would be necessary for the decedent to remain in the hospital only a short time.

From all these facts, we can only reach the conclusion that the decedent must have been moved to make the gifts of March, 1922, by some reason other than contemplation of death, as that term has been heretofore consistently construed by us and by the authorities cited above.

However, this conclusion need not rest solely on the uncontroverted facts above referred to. There is ample evidence, in our opinion, to establish other adequate motives actuating the gifts in question.

Decedent's son-in-law, Hemingway, husband of his daughter Arabell, died on February 24, 1922, and while he left a considerable gross estate, it was heavily encumbered, and the assets were producing but little, if any, income which would be available to the widow. Mrs. Hemingway, in this situation, was most disturbed about her finances, and talked the matter over repeatedly with her brother and with her father's attorney. The brother in turn discussed the matter with his father, who at once expressed his intention to make adequate financial provision for his daughter to the end that she might have sufficient income to maintain her family and keep her children in school without undue worry.

It is shown that decedent throughout his life had adhered rigorously to a rule of impartiality in making gifts to his children.

Whenever he was moved for any reason to make a gift to one child, he invariably made gifts of similar value to the others. Therefore, to make financial provision for his daughter, Mrs. Hemingway, required him, from a sense of fairness, to make similar provisions for his other children.

On March 6, 1922, while this matter was thus under consideration by the decedent, his secretary prepared his income-tax return for 1921, indicating a total tax in excess of $154,000. This was a material increase in decedent's tax liability over previous years, and he discussed with his son the large amount of tax which he would be required to pay. The son thereupon directed his father's secretary to prepare calculations of tax liability on the basis of a division of his father's property, consisting principally of corporate stocks, into five equal parts, and it was found that on such basis the total tax liability would be $49,460.99, effecting a saving of more than $100,000 in income tax on the same income. These figures were brought to the attention of the decedent, who immediately had his attorney prepare, and he on the same date executed, the transfer agreement of March 7, 1922. By this arrangement he made suitable provision for his daughter, Mrs. Hemingway, made similar gifts to his other children and to his wife, and effected a substantial reduction in income-tax liability. These motives, we think, were adequate in the circumstances. See *Emily J. Pratt et al., Executrices,* 18 B. T. A. 377.

In our opinion, the evidence also establishes that a reasonable motive, other than contemplation of death, moved the decedent to give the home in Kansas City to his wife, which was transferred to her by deed executed and delivered on March 21, 1922.

Several years prior to his death the decedent gave certain real estate located in New York State to his daughters and at that time announced his intention of giving the home to his wife, but for some undisclosed reason he did not at that time transfer the title to her. Prior to her marriage, decedent's wife had taught school for some ten years and was much interested in children and school work. Early in 1922, she was requested by her friends to become a candidate for school trustee. However, only property owners were eligible to hold that office and, when the matter was brought to the attention of the decedent, he immediately on the same day had a deed prepared, which he executed and delivered to his wife, transferring the home to her. Thus, the decedent by the same formal act gave effect to his expressed intention of giving the home to his wife, and also qualified her to hold the position of school trustee, which she desired.

Upon consideration of all the evidence, it is our opinion that the petitioner has overcome the presumption of fact created by the statute, and has discharged the burden of proof cast upon him. We

hold, therefore, that the gifts in question were not made in contemplation of death within the meaning of the taxing statute, and that the respondent erred in including the value thereof in decedent's gross estate.

The tax liability will be recomputed in accordance with this opinion and the foregoing findings of fact.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON and TRUSSELL dissent.