EDMUND W. GERRY, EXECUTOR, ESTATE OF ARATUS EVERETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25744. Promulgated March 17, 1931.

*Thomas R. Dempsey, Esq., A. Calder Mackay, Esq.,* and *Arthur McGregor, Esq.,* for the petitioner.

*Frank T. Horner, Esq.,* for the respondent.

OPINION.

SEAWELL: The first question presented is whether the conveyances made by the decedent to his children as set forth in our findings of fact were made in contemplation of or intended to take effect in possession or enjoyment at or after his death.

The applicable provisions of the statute are contained in section 402 (c) of the Revenue Act of 1921 and read as follows:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or .personal, tangible or intangible, wherever situated—

\*    \*    \*    \*    \*    \*    \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The Commissioner determined that said conveyances were made in contemplation of death and that the value of the property, $228,450.31, conveyed by the decedent to his children, should, in determining the net estate, be included in the gross estate. There have been so many decisions in which the term " contemplation of death " has been defined and commented upon that an extended discussion of the subject would result in repetition and duplication of effort and serve no useful purpose.

Our decision herein is controlled or sustained by the following cases and numerous others cited therein: *Joseph Edward Phillips, Executor, et al.*, 7 B. T. A. 1054; *Isaac Gimbel et al., Executors*, 11 B. T. A. 214; *George Snyder Crilly et al.*, 15 B. T. A. 389; *George Heipershausen et al., Executors*, 18 B. T. A. 218; *Eugene Siegel, Executor*, 19 B. T. A. 683; and *Meyer v. United States*, 60 Ct. Cls. 474.

The evidence shows very clearly that the decedent was a man of rather unusual physical and mental vigor and activity. His farming operations on his ranch of more than 1,500 acres so indicated. He knew he had diabetes and was frequently under examination and supervision by his physician, but his general health was good and his condition apparently was about the same from 1902 until his death in 1923. His disease did not prevent him from attending to business nor does the evidence show it to have been such as to cause him to expect death in the near future any time during the twenty years

that he was so afflicted. If the decedent died of angina pectoris, as Dr. Van Fleet's certificate indicates, there is no other evidence so indicating and no evidence whatever that the decedent knew or believed he had it. Dr. Livingstone, his regular physician, on cross-examination testified as follows:

Q. Did the diabetic condition have any deleterious or bad effect upon the heart in his case?

A. No, his heart was such that he was able to go about actively, and another thing, he was very brisk in his walk at all times, always walked with a spring and speed, more than most young people, in fact.

Q. In your examination of his heart did you find any trace of angina pectoris?

A. No, he never complained of angina pectoris.

When the decedent made the deeds of gift to his children in 1910, for their "better maintenance, support, protection and livelihood," and delivered the deeds to them, the evidence does not indicate that he was then alarmed about his health or anticipated or contemplated death in the near future, nor does the evidence shown anything of the kind when the children in 1922 requested that their deeds of May 30, 1910, be then put to record.

The evidence indicates that decedent thought he was getting for his property more than it was worth when he made his sale agreement with A. H. Hitch and son. The sale agreement recognized that a portion of the property to be conveyed to Hitch and son was owned by two of decedent's children and for that reason it was necessary that they should join in the agreement, which provided that a part of the consideration for the transfer should be paid them.

The agreement for the sale was dated and executed on June 6, 1922, the deeds to the four children of the decedent having been executed and, the evidence indicates, delivered to them May 30 or 31, 1910, though said deeds were not actually recorded until June 7, 1922. In California, recordation is not necessary to effect complete transfer of title. *Stephenson* v. *Deuel*, 125 Cal. 656; 58 Pac. 258.

In our opinion, upon the whole evidence, Aratus Everett had no expectation, belief or apprehension when he made the transfers to his children, May 30, 1910, that his death was near or would occur in the near future, nor were they made in contemplation of death or to take effect at or after death within the meaning of section 402 (e) of the Revenue Act of 1921. Decedent's conduct and activities at the time and subsequent thereto, even up to the day of his death, April 26, 1923, show that he was not contemplating death at an early date. If said four deeds from the decedent to his children in 1910 were in that year complete and effective, which in the circumstances of the instant case we hold, there is then no statutory presumption arising that said deeds were made in contemplation of death or only intended to take effect in possession or enjoyment after decedent's death because said

deeds were not actually recorded until within two years of decedent's death. The terms of the sale agreement with Hitch and son show that the son and daughter of decedent, whose property was being conveyed to Hitch and son, were to share in the proceeds of such sale *prior* to the death of the decedent. It follows, therefore, that the respondent erred in including in the decedent's gross estate the value of the property, $228,450.31, transferred by decedent to his children on May 30, 1910.

The evidence shows that the petitioner paid estate tax, on December 1, 1925, in the sum of $2,752.86, for which no credit is shown by the deficiency notice to have been given. The petitioner is entitled to such credit and we so adjudge.

*Judgment will be entered under Rule 50.*