### GAITHER v. MILES, Internal Revenue Collector.

(District Court, D. Maryland. October 23, 1920.)

1. **Internal revenue ☞8—Policy transferred, with reservation of right to change beneficiary, subject to estate tax.**

   Where decedent, in having a policy on his life made payable to his son and daughter, reserved the right to again change the beneficiary, the policy remained a part of his estate, and subject to the estate tax.

2. **Internal revenue ☞8—Endowment policy transferred, with reservation of right to amount, if maturing before insured's death, held taxable.**

   Where insured, in transferring an endowment policy to his son and daughter, provided that, if he were living at its maturity the amount should be paid to him, its proceeds were subject to the estate tax, as the transfer was not to take effect in possession or enjoyment until his death.

3. **Internal revenue ☞28—Executor held not to have burden of showing transfer of policies was not in contemplation of death.**

   That a man, leaving an estate of over $580,000, shortly before his death transferred insurance policies aggregating $21,973.69, did not throw on his executor the burden of proving that they were not transferred in contemplation of death.

4. **Internal revenue ☞8—Insurance policies, absolutely assigned, held not transferred in contemplation of death.**

   Insurance policies, assigned by insured within two years before his death at the age of 83, *held* not to have been transferred in contemplation of death, so as to be subject to the estate tax.

At Law. Action by Thomas H. Gaither, Jr., against Joshua W. Miles, Collector of Internal Revenue. Judgment for plaintiff for part of the amount sued for.

George R. Gaither, of Baltimore, Md., for plaintiff.
Samuel K. Dennis, of Baltimore, Md., for defendant.

ROSE, District Judge. [1] The plaintiff, as executor of the late Thomas H. Gaither, is here suing to recover $3,469.63, paid under protest as an estate tax upon $34,695.25, the proceeds of five insurance policies upon the life of the testator, who, about two months before his death, had caused them to be made payable to his son and daughter. In the transfer of one of these policies, he reserved to himself the right to again change the beneficiary. That policy remained a part of his estate. Cohen v. Samuels, 245 U. S. 50, 38 Sup. Ct. 36, 62 L. Ed. 143.

[2] Another of them was of the endowment class. It had about 19 months longer to run. He provided, if he were living at its maturity, the amount then becoming due under it should be paid to him. In neither of the above instances was the transfer intended to take effect in possession of enjoyment until the death of the assignor, and the proceeds of these policies, amounting to $12,921.60, were accordingly subject to tax as part of his estate.

[3] In none of the other three policies did the testator reserve any interest, either to himself or to his personal representatives. The transfers of them were made without consideration, and within much less than two years before his death. They were for the aggregate amount of $21,973.69. Substantial as that sum is, it is, however, less than 4 per cent. of his whole estate, which amounted to upwards of $580,000, and they scarcely form such a material part of it as throws upon the plaintiff the burden of proving that they were not parted with in contemplation of death. Has the government shown that they were?

[4] At the time the transfers were made, the testator was 83 years of age. Some 3 years before, he had a very slight paralytic stroke. Its effects had largely, if not altogether, passed off, and for a man of his age he was in a fair state of health, until about 10 days before his death. Although his physician and neighbor kept an eye upon him, he was able to go wherever business or pleasure called him, and appears to have kept the management of his affairs in his own hands. About the time he transferred the policies in question, he unquestionably had on his mind the desirability of making provison for what would happen after he died. He made a new will, but one which did little more than confirm a number of other wills and codicils which he had executed in the course of the preceding quarter of a century. The essential scheme of all of them was the same; the difference in their terms being due to their having been from time to time adapted to changes in family conditions. He owned some warehouses in Baltimore, worth upwards of $100,000. A part of the lot or lots upon which these buildings stood were subject to a ground rent, and in Maryland, as personalty, would have to be administered through the orphans' court. The balance was in fee simple, and, over that, that court would have no jurisdiction.

Some complications might result, and to avoid that possibility, some 6 or 8 weeks after he assigned his life insurance policies and made his latest will, he executed certain conveyances, the effect of which was to cut down his interest in these lots to a life estate, with remainder to his children.

Besides these warehouses and his life insurance, he had upwards of $400,000 of other property. Although more than $150,000 of this property was in the form of readily transferable stocks and bonds, he made no attempt to part with any of them. His care to reserve to himself a life estate in his warehouses, and to provide that, if he were living 19 months, later, when his endowment policy matured, what would then be due should be payable to him, tends to show that in the summer of 1919 he was not in expectation of immediate death.

Under all the circumstances, I do not feel justified in holding that the three policies, which were absolutely assigned, were within the statutory meaning of the phrase "transferred in contemplation of death."

It follows that the plaintiff is entitled to recover the sum of $2,173.70 improperly levied upon these policies.