Robert P. Goldman et al., Executors, Estate of Louis J. Goldman, Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 11463.   Promulgated March 20. 1928.

*Briggs G. Simpich, Esq.*, for the petitioners.
*F. T. Horner, Esq.*, for the respondent.

OPINION.

STERNHAGEN : The only question in this proceeding is whether the respondent erred in including in the estate of Louis J. Goldman, hereinafter called the decedent, stock in the Cincinnati Electrical Tool Co., of the par value of $65,000 which was given by him in February, 1921, to his son, his daughter and his wife, approximately six months prior to his death on August 23, 1921.

Section 402 of the Revenue Act of 1918 provides:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title; * * *

In the instant proceeding we find from the evidence that the $5,000 stock which the decedent transferred to his wife in February, 1921, was in payment of a note which the decedent had executed in return for a loan of $5,000. This transfer of stock was then a payment of an obligation.

In 1907 when the decedent's daughter, Edna, was married, the decedent gave her as a wedding present a demand note for $30,000 carrying interest at 6 per cent per annum. The interest was paid in monthly installments until sometime in 1914, when the decedent's financial affairs became so involved that payment of interest was suspended.

The testimony shows that at the time J. A. Goldman, son of the decedent, became engaged to marry, the decedent promised him a gift of $30,000, and that at the wedding which occurred in 1914, the decedent stated to his son that the promise held good, and that he would make payment in due time.

The testimony further shows that the decedent, in February, 1921, transferred to his daughter, Edna, and his son, J. A. Goldman, each, $30,000 stock in the Cincinnati Electrical Tool Co. These transfers were made after the Cincinnati Electrical Tool Company had declared a 200 per cent stock dividend. It was testified that the decedent was not willing to make such transfers until this time because he desired to retain control of the Cincinnati Electrical Tool Company.

In *Spencer Borden, Jr., Executor*, 6 B. T. A. 255, and *Anna Serrien, Executrix*, 7 B. T. A. 1129, we quoted with approval the language employed by the court in the case of *Spreckels* v. *State*, 30 Cal. App. 363, which was as follows:

The language referred to was not intended to include that general expectation of death which is the essential concomitant of the inherent knowledge of the inevitable termination of all life, and which is in the young and physically robust as well as in the aged and the infirm. No similar statute has been so construed. A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death that the property so transferred becomes amenable to the burden; or, as counsel for the respondent with singular aptness states the proposition:

"It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax."

The evidence discloses that for a number of years prior to his death, at the age of seventy-one years, the decedent had suffered from a heart affection and that his death was caused by an embolus in the right leg, which was not necessarily a result of the condition of the decedent's heart. Medical testimony introduced showed that an embolus rarely developed in such a case and that such an affliction could not be foreseen. The fatal illness lasted about three or four weeks. Prior to this last·illness the heart attacks of the decedent had occurred no more frequently than for some years theretofore.

At all times up to his last illness the decedent was optimistic and hopeful, never inquired of his doctor concerning his condition, took an active interest in his business and affairs in general, and never expressed to his family a fear of death in the immediate or reasonably distant future. From all the evidence in the case we are of the opinion that the transfer of the $65,000 stock was not made in contemplation of death, within the meaning of section 402 (c) of the Revenue Act of 1918, and the respondent has erred in including this amount in the estate of the decedent.

*Judgment will be entered for the petitioner.*