# HEINER, COLLECTOR OF INTERNAL REVENUE, *v.* DONNAN ET AL.

No. 514.   Argued February 26, 1932.—Decided March 21, 1932.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Claude R. Branch, Sewall Key, A. H. Conner,* and *Erwin N. Griswold* were on the brief, for Heiner, Collector.

*Mr. William G. Heiner* for Donnan et al., Executors.

By leave of Court, briefs of *amici curiae* were filed, *viz.*:
By *Mr. Wayne Johnson; Mr. James Marshall; Messrs.
E. F. Colladay, Wilton H. Wallace, David O. Dunbar,
Clinton Merrick,* and *James O. Moore,* on behalf of the
Continental Illinois Bank & Trust Co.; and *Messrs. Sam-
uel W. Fordyce, Henry J. Richardson,* and *C. Powell
Fordyce,* on behalf of the St. Louis Union Trust Co. et al.

MR. JUSTICE SUTHERLAND delivered the opinion of
the Court.

This case is here on a certificate from the Circuit Court
of Appeals for the Third Circuit. On March 1, 1927,
John W. Donnan, by complete and irrevocable gift *inter
vivos,* transferred without consideration certain securities
to trustees for his four children, and also, without con-
sideration, advanced a sum of money to his son. He died
on December 23, 1928, less than two years after the gifts
and advancement were made. The Commissioner of In-
ternal Revenue included in the gross estate of decedent
the value of the property transferred, and imposed a
death transfer tax accordingly, on authority of the clause
in § 302 (c) of the Revenue Act of 1926, c. 27, 44 Stat.
9, 70 (U. S. C., Sup. V, Title 26, § 1094), which, without
regard to the fact, provides that such a transfer made
within two years prior to the death of the decedent shall
" be deemed and held to have been made in contemplation
of death within the meaning of this title."*

---

*" Sec. 302. The value of the gross estate of the decedent shall
be determined by including the value at the time of his death of
all property, real or personal, tangible or intangible, wherever situ-
ated—

"(c) To the extent of any interest therein of which the decedent
has at any time made a transfer, by trust or otherwise, in contem-
plation of or intended to take effect in possession or enjoyment at
or after his death, except in case of a bona fide sale for an adequate

The executors paid the tax, and, after rejection of a claim for refund, brought this action in the federal district court for the western district of Pennsylvania to recover the amount of the tax attributable to the inclusion of the property in question by the commissioner. The trial court found that neither the transfer in trust nor the advancement was made in contemplation of death. Judgment was rendered in favor of the executors on the ground that the foregoing provision of § 302 (c) was unconstitutional as contravening the due process clause of the Fifth Amendment, and void as being repugnant to other sections of the act. 48 F. (2d) 1058. An appeal was taken, and the circuit court of appeals has certified to this court two questions of law upon which instruction is desired:

" 1. Does the second sentence of section 302 (c) of the revenue act of 1926 violate the due process clause of the fifth amendment to the Constitution of the United States?

" 2. If the answer to the first question be in the negative, is the second sentence of section 302 (c) of the revenue act of 1926 void because repugnant to sections 1111, 1113 (a), 1117, and 1122 (c) of the same act?"

---

and full consideration in money or money's worth. *Where within two years prior to his death* but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, *such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title*. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

A negative answer to the first question, if made, must rest either upon the ground that Congress has the constitutional power to deny to the representatives of the estate of a decedent the right to show by competent evidence that a gift made within two years prior to the death of the decedent was in fact not made in contemplation of death; or upon the theory that, although the tax in question is imposed as a death transfer tax, it nevertheless may be sustained as a gift tax.

*First.* Section 301 of the Revenue Act of 1926 imposes a tax " upon the transfer of the net estate of every decedent," etc. There can be no doubt as to the meaning of this language. The thing taxed is the transmission of property from the dead to the living. It does not include pure gifts *inter vivos*. The tax rests, in essence, " upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. . . . it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." *Knowlton* v. *Moore,* 178 U. S. 41, 56, 57. The value of property transferred without consideration and in contemplation of death is included in the value of the gross estate of the decedent for the purposes of a death tax, because the transfer is considered to be testamentary in effect. *Milliken* v. *United States,* 283 U. S. 15, 23. But such a transfer, not so made, embodies a transaction begun and completed wholly by and between the living, taxable as a gift (*Bromley* v. *McCaughn,* 280 U. S. 124), but obviously not subject to any form of death duty, since it bears no relation whatever to death. The " generating source " of such a gift is to be found in the facts of life and not in the circumstance of death. And the death afterward of the donor in no way changes the situation; that is to say, the

death does not result in a shifting, or in the completion of a shifting, to the donee of any economic benefit of property, which is the subject of a death tax, *Chase Nat. Bank v. United States,* 278 U. S. 327, 338; *Reinecke v. Northern Trust Co.,* 278 U. S. 339, 346; *Saltonstall v. Saltonstall,* 276 U. S. 260, 271; nor does the death in such case bring into being, or ripen for the donee or anyone else, so far as the gift is concerned, any property right or interest which can be the subject of any form of death tax. Compare *Tyler v. United States,* 281 U. S. 497, 503. Complete ownership of the gift, together with all its incidents, has passed during the life of both donor and donee, and no interest of any kind remains to pass to one or cease in the other in consequence of the death which happens afterward.

The phrase " in contemplation of or intended to take effect . . . at or after his death," found in the provisions of § 302 (c) of the act of 1926 and prior acts, as applied to fully executed gifts *inter vivos,* puts them in the same category for purposes of taxation with gifts *causa mortis.* In this light, the meaning and purpose of the provision were considered, in a recent decision of this court dealing with the Revenue Act of 1918. *United States v. Wells,* 283 U. S. 102, 116–117, 118:

"The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. *Nichols v. Coolidge,* 274 U. S. 531, 542; *Milliken v. United States, ante,* p. 15. As the transfer may otherwise have all the indicia of a valid gift *inter vivos,* the differentiating factor must be found in the transferor's motive. Death must be ' contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. As a condition of body or mind that naturally gives rise to the feeling that death is near, that the donor is about to reach the moment of inevitable surrender of ownership,

is most likely to prompt such a disposition to those who are deemed to be the proper objects of his bounty, the evidence of the existence or non-existence of such a condition at the time of the gift is obviously of great importance in determining whether it is made in contemplation of death. The natural and reasonable inference which may be drawn from the fact that but a short period intervenes between the transfer and death, is recognized by the statutory provision creating a presumption in the case of gifts within two years prior to death. But this presumption, by the statute before us, [Act of 1918] is expressly stated to be a rebuttable one, and the mere fact that death ensues even shortly after the gift does not determine absolutely that it is in contemplation of death. The question, necessarily, is as to the state of mind of the donor.

. . . . .

" If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts *inter vivos* which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed."

There is no doubt of the power of Congress to provide for including in the gross estate of a decedent, for purposes of the death tax, the value of gifts made in contemplation of death; and likewise no doubt of the power of that body to create a rebuttable presumption that gifts made within a period of two years prior to death are made in contemplation thereof. But the presumption here created is not of that kind. It is made definitely conclusive—incapable of being overcome by proof of the most positive character. Thus stated, the first question submitted is answered in the affirmative by *Schlesinger* v. *Wisconsin*, 270 U. S. 230, and *Hoeper* v. *Tax Commission*, 284 U. S. 206. The only difference between the present

case and the *Schlesinger* case is that there the statute fixed a period of six years as limiting the application of the presumption, while here it is fixed at two; and there the Fourteenth Amendment was involved, while here it is the Fifth Amendment. The length of time was not a factor in the case. The presumption was held invalid upon the ground that the statute made it conclusive without regard to actualities, while like gifts at other times were not thus treated; and that there was no adequate basis for such a distinction. " The presumption and consequent taxation," the court said (p. 240), " are defended upon the theory that, exercising judgment and discretion, the legislature found them necessary in order to prevent evasion of inheritance taxes. That is to say, 'A' may be required to submit to an exactment forbidden by the Constitution if this seems necessary in order to enable the State readily to collect lawful charges against 'B.' Rights guaranteed by the federal Constitution are not to be so lightly treated; they are superior to this supposed necessity. The State is forbidden to deny due process of law or the equal protection of the laws for any purpose whatsoever."

The *Schlesinger* case has since been applied many times by the lower federal courts, by the Board of Tax Appeals, and by state courts; * and none of them seem to have been at any loss to understand the basis of the decision, namely, that a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert, is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment.

---

* See for example, *Hall* v. *White*, 48 F. (2d) 1060; *Donnan* v. *Heiner*, 48 F. (2d) 1058 (the present case); *Guinzburg* v. *Anderson*, 51 F. (2d) 592; American Security & Trust Co., 24 B. T. A. 334; *State Tax Commission* v. *Robinson's Executor*, 234 Ky. 415; 28 S. W. (2d) 491 (involving a three year period).

Nor is it material that the Fourteenth Amendment was involved in the *Schlesinger* case, instead of the Fifth Amendment, as here. The restraint imposed upon legislation by the due process clauses of the two amendments is the same. *Coolidge* v. *Long,* 282 U. S. 582, 596. That a federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due process of law clause of the Fifth Amendment is settled. *Nichols* v. *Coolidge,* 274 U. S. 531, 542; *Brushaber* v. *Union Pac. R. Co.,* 240 U. S. 1, 24–25; *Tyler* v. *United States, supra,* p. 504.

In *Hoeper* v. *Tax Commission, supra,* this court had before it for consideration a statute of Wisconsin which provided that in computing the amount of income taxes payable by persons residing together as members of a family, the income of the wife should be added to that of the husband and assessed to and payable by him. We held that, since in law and in fact the wife's income was her separate property, the state was without power to measure his tax in part by the income of his wife. At page 215 we said:

" We have no doubt that, because of the fundamental conceptions which underlie our system, any attempt by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law as guaranteed by the Fourteenth Amendment. That which is not in fact the taxpayer's income cannot be made such by calling it income. Compare *Nichols* v. *Coolidge,* 274 U. S. 531, 540."

The suggestion of the state court that the provision was valid as necessary to prevent frauds and evasions of the tax by married persons was definitely rejected on the ground that such claimed necessity could not justify an otherwise unconstitutional exaction.

In substance and effect, the situation presented in the *Hoeper* case is the same as that presented here. In the

first place, the tax, in part, is laid in respect of property shown not to have been transferred in contemplation of death and the complete title to which had passed to the donee during the lifetime of the donor; and secondly, the tax is not laid upon the transfer of the gift or in respect of its value. It is laid upon the transfer, and calculated upon the value, of the estate of the decedent, such value being enhanced by the fictitious inclusion of the gift, and the estate made liable for a tax computed upon that value. Moreover, under the statute the value of the gift when made is to be ignored, and its value arbitrarily fixed as of the date of the donor's death. The result is that upon those who succeed to the decedent's estate there is imposed the burden of a tax, measured in part by property which comprises no portion of the estate, to which the estate is in no way related, and from which the estate derives no benefit of any description. Plainly, this is to measure the tax on A's property by imputing to it in part the value of the property of B, a result which both the *Schlesinger* and *Hoeper* cases condemn as arbitrary and a denial of due process of law. Such an exaction is not taxation but spoliation. "It is not taxation that government should take from one the profits and gains of another. That is taxation which compels one to pay for the support of the government from his own gains and of his own property." *United States* v. *Railroad Co.,* 17 Wall. 322, 326.

The presumption here excludes consideration of every fact and circumstance tending to show the real motive of the donor. The young man in abounding health, bereft of life by a stroke of lightning within two years after making a gift, is conclusively presumed to have acted under the inducement of the thought of death, equally with the old and ailing who already stands in the shadow of the inevitable end. And although the tax explicitly is based upon the circumstance that the thought of death must be the impelling cause of the transfer (*United*

*States* v. *Wells, supra,* p. 118), the presumption, nevertheless, precludes the ascertainment of the truth in respect of that requisite upon which the liability is made to rest, with the result, in the present case and in many others, of putting upon an estate the burden of a tax measured in part by the value of property never owned by the estate or in the remotest degree connected with the death which brought it into existence. Such a statute is more arbitrary and less defensible against attack than one imposing arbitrarily retroactive taxes, which this court has decided to be in clear violation of the Fifth Amendment. As said by Judge Learned Hand in *Frew* v. *Bowers,* 12 F. (2d) 625, 630, " Such a law is far more capricious than merely retroactive taxes. Those do indeed impose unexpected burdens, but at least they distribute them in accordance with the taxpayer's wealth. But this section distributes them in accordance with another's wealth; that is a far more grievous injustice."

To sustain the validity of this irrebuttable presumption it is argued, with apparent conviction, that under the *prima facie* presumption originally in force there had been a loss of revenue, and decisions holding that particular gifts were not made in contemplation of death are cited. This is very near to saying that the individual, innocent of evasion, may be stripped of his constitutional rights in order to further a more thorough enforcement of the tax against the guilty—a new and startling doctrine, condemned by its mere statement and distinctly repudiated by this court in the *Schlesinger* (p. 240) and *Hoeper* (p. 217) cases involving similar situations. Both emphatically declared that such rights were superior to this supposed necessity.

The government makes the point that the conclusive presumption created by the statute is a rule of substantive law, and, regarded as such, should be upheld; and decisions tending to support that view are cited. The

earlier revenue acts created a *prima facie* presumption, which was made irrebuttable by the later act of 1926. A rebuttable presumption clearly is a rule of evidence which has the effect of shifting the burden of proof, *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U. S. 35, 43; and it is hard to see how a statutory rebuttable presumption is turned from a rule of evidence into a rule of substantive law as the result of a later statute making it conclusive. In both cases it is a substitute for proof; in the one open to challenge and disproof, and in the other conclusive. However, whether the latter presumption be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality, and the result is the same, unless we are ready to overrule the *Schlesinger* case, as we are not; for that case dealt with a conclusive presumption and the court held it invalid without regard to the question of its technical characterization. This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. For example, *Bailey* v. *Alabama,* 219 U. S. 219, 238, *et seq.; Manley* v. *Georgia,* 279 U. S. 1, 5–6. "It is apparent," this court said in the *Bailey* case (p. 239) "that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions."

If a legislative body is without power to enact as a rule of evidence a statute denying a litigant the right to prove the facts of his case, certainly the power cannot be made to emerge by putting the enactment in the guise of a rule of substantive law.

*Second.* The provision in question cannot be sustained as imposing a gift tax, (1) because the intent of Congress to enact the provision as an incident of the death tax and not as a gift tax is unmistakable; and (2) because, if construed as imposing a gift tax, it is in that aspect still so arbitrary and capricious as to cause it to fall within the ban of the due process clause of the Fifth Amendment.

1. The intent of Congress to include gifts made in contemplation of death as integral parts of the decedent's estate for the purposes of the death tax only is so clear as, reasonably, to preclude argument to the contrary. In *United States* v. *Wells, supra,* this court held, as already shown, that since it is the thought of death, as a controlling motive prompting the gift, that affords the test whether it is made in contemplation of death, " it follows that the statute does not embrace gifts *inter vivos* which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed." And see *Reinecke* v. *Trust Co., supra,* at p. 347. It is significant that the repeal of the gift tax referred to was made by the same act (c. 27, § 1200 (a), 44 Stat. 9, 125), which contains the provision here in question. The tax is imposed upon the transfer of the net estate, but it is first necessary to ascertain the value of the gross estate, and the statute provides that this is to be determined by including, among other things, the value of any interest in property of which the decedent has at any time made a transfer in contemplation of his death. The statute requires that this value shall be determined as of the time of the decedent's death, without regard to the value of the gift when received. The event upon which the tax is made to depend is not the transfer of the gift, but the transfer of the estate of the decedent. The tax falls upon the estate and not upon the gift, and is computed not upon the value of the gift, but, by progressively

graduated percentages, upon the value of the entire estate. It is so apparent from a consideration of these features of the statute that Congress could not have had, even remotely, in mind the imposition of a gift tax, that to construe the provision in question as imposing such a tax is to disregard the plain language and the plain intent of the act. For this court to do so would be to enact a law under the pretense of construing one and thus pronounce itself guilty of a flagrant perversion of the judicial power.

2. But if we assume, contrary to what is reasonable, that a gift tax is imposed by providing that the value of property transferred without consideration by a decedent within two years prior to his death shall be included in the value of the gross estate, the case for the government is no better. In the *Schlesinger* case, the Supreme Court of Wisconsin had expressly held that the tax could not be supported as one on gifts *inter vivos* only, saying, " Under such taxation the classification is wholly arbitrary and void. We perceive no more reason why such gifts *inter vivos* should be taxed than gifts made within six years of marriage or any other event. It is because only one class of gifts closely connected with and a part of the inheritance tax law is created that the law becomes valid." *Estate of Schlesinger,* 184 Wis. 1, 10; 199 N. W. 951. This court accepted that view in these words (p. 239): " The court below declared that a tax on gifts *inter vivos* only could not be so laid as to hit those made within six years of the donor's death and exempt all others—this would be ' wholly arbitrary.' We agree with this view and are of opinion that such a classification would be in plain conflict with the Fourteenth Amendment." And it follows that the present provision, written in almost identical terms, is in plain conflict with the Fifth Amendment. The provisions of the statute referred to in the preceding paragraph of this opinion necessarily condition the tax, however it be char-

acterized. If it be a gift tax, it, nevertheless, is based, not upon the transfer of the gift, but upon the transfer of the estate; and upon the value of the estate, and not that of the gift. Obviously these are bases having no relation whatever to the gift. Moreover, the value of the gift is not to be determined as of the time when made, but, considered as a part of the estate, is to be fixed as of the date of the decedent's death—a condition so obviously arbitrary and capricious as, by itself, to condemn the tax, viewed as a gift tax, as violative of due process. It is to be paid by the beneficiaries of the decedent, although it is impossible for them to share in the gift which has passed beyond recall. It is, therefore, a contribution to the government exacted of one person, based *pro tanto* upon the wealth of another.

Considered as a gift tax, these conditions demonstrate the entire lack of relation between the taxpayer and the transfer which is the subject of the tax. They disclose that there is no rational ground for measuring the tax, considered as a gift tax and not as a death tax, by the value of an estate coming into being after the gift has become complete and irrevocable, and of which the gift comprises no part. And they show that to impose liability for the tax, as a gift tax, upon the estate, as they in terms require, is, in effect, to exact tribute from the gains or property of one measured by the gains or property of another.

The first question must be answered in the affirmative and this makes it unnecessary to answer the second.

*It is so ordered.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

MR. JUSTICE STONE, dissenting.

I think the tax involved in this and its companion case, *Handy* v. *Delaware Trust Co., post,* p. 352, is in all respects

valid, and that the certified questions in both cases should be answered in the negative.

The present federal estate tax, enacted in 1916, Title II of the Revenue Act of 1916, c. 463, 39 Stat. 777, has been continued in each successive Revenue Act. Although levied upon the privilege of transferring property passing at death and imposed on the estates of decedents, the prescribed tax was not limited to such transfers. By § 202 (b) and (c) of the 1916 Act it was extended to gifts *inter vivos,* made in contemplation of death, and to gifts of property upon joint tenancy or tenancy by the entirety, the benefit of which inured to the surviving tenant upon the death of the donor. Both classes of gifts were taxed as a part of the decedent's estate at the rates prescribed by the estate tax. The obvious purpose of these provisions was to prevent or compensate for the withdrawal of property by gifts *inter vivos* from the operation of the estate tax. The 1918 Revenue Act, § 402 (c) and (f), c. 18, 40 Stat. 1057, 1097, included in the donor's estate, subject to the estate tax, all gifts effected by any trust taking effect in possession or enjoyment at the time of the donor's death, and the proceeds in excess of $40,000 of life insurance purchased by the decedent in his lifetime and payable to named beneficiaries at his death.

As a further measure for preventing avoidance of the tax by gifts *inter vivos,* Congress, in 1924, adopted the gift tax, §§ 319–324 of the Revenue Act of that year, c. 234, 43 Stat. 253, 313–316. That it was adopted as a measure to prevent avoidance of the estate tax sufficiently appears from the fact that the graduated rates and exemptions of the tax were the same as in the case of testamentary transfers, §§ 301 (a), 319, 303 (a) (4), 321 (a) (1),[1] and from the fact that in the Revenue Act of 1926

[1] See also House Report No. 179, 68th Congress, 1st Sess., p. 75; Congressional Record, Vol. 65, Part 3, pp. 3119, 3120, 3122; Part 4, pp. 3371, 3372, 3373; Part 8, pp. 8094, 8095, 8096.

the retroactive reductions in rates of the estate tax were extended to the rates of the gift tax. §§ 301, 324, Revenue Act of 1926, c. 27, 44 Stat. 9, 69, 86. Provisions were also made for crediting the gift tax against the estate tax where the amount of the gift was later required to be included in the decedent's gross estate. § 322, Revenue Act of 1924, 43 Stat. 316; § 404, Revenue Act of 1928, c. 852, 45 Stat. 791, 863.

Because of inequalities and inconvenience, expense and other difficulties in its operation and administration, the gift tax was repealed by § 1200 of the Revenue Act of 1926, 44 Stat. 125;[2] and as a result of ten years' experience in the administration of the estate tax and particularly of the provision taxing gifts in contemplation of death, the present provision of § 302 (c) of the Revenue Act of 1926, 44 Stat. 70, was added, which operates to impose the tax on all gifts made within two years of death, regardless of the purpose or motive of the donor. The Ways and Means Committee of the House of Representatives, in its report recommending this legislation (House Report No. 1, 69th Congress, 1st Sess., p. 15), pointed out that the tax on gifts in contemplation of death had been ineffective in its practical administration, with a great loss of revenue to the Government in consequence, and that " the difficulty of enforcement will be even more serious in view of the repeal of the gift tax." It stated, without qualification, that the amendment was one imposing the tax on all gifts made within two years of death, and said that " the inclusion of this provision will prevent most of the evasion and is the only way in which it can be prevented." [3]

---

[2] See Senate Report No. 52, 69th Congress, 1st Sess., p. 9.

[3] This consideration seems also to have motivated the corresponding English legislation. In 1881 England adopted a statute, 44 Vict. c. 12, § 38 (2) (a), which included gifts *inter vivos*, made within three months of the death, in the donor's estate, subject to death

As we are concerned here only with the power of Congress to tax such gifts, I shall take no time in discussing the particular form of language by which Congress has sought to accomplish its purpose. In this statute taxing gifts *inter vivos*, as though they were legacies, it can be of no consequence whether the enactment says that all gifts within two years of death of the donor are irrebuttably presumed to be in contemplation of death or whether more directly it imposes the tax on all gifts made within two years of the donor's death. In either case, we are concerned only with the power which, here, the legislative body has indisputably sought to exert, and not with the particular choice of words by which it has expressed that purpose.

The question, reduced to its simplest terms, is whether Congress possesses the power to supplement an estate tax, and protect the revenue derived from it, as was its declared purpose, by a tax on all gifts *inter vivos*, made within two years of the death of the donor, at the same rate and in the same manner as though the gift were made at death. I think it has.

At the outset it is to be borne in mind that gifts *inter vivos* are not immune from federal taxation. Whatever doubts may formerly have been entertained, it is now settled that the national Government may tax all gifts

duties. The three months was increased to one year, in 1889, 52 Vict. c. 7, § 11 (1), and to three years in 1910, 10 Edw. VII, c. 8, § 59 (1), the last provision remaining in force, except in some particular circumstances not now necessary to mention, until the present time.

The brief for the Government in No. 514, Appendix B, lists fourteen states which, prior to the enactment of the present statute in 1926, had found it necessary or expedient to adopt similar legislation; the state statutes subjected to inheritance taxation gifts made within periods ranging from one to six years of the donor's death. See also Sabine, "Transfers in Contemplation of Death," 5 Internal Revenue News, September, 1931, p. 8.

*inter vivos* and at rates comparable to those which may be imposed on gifts at death. *Bromley* v. *McCaughn,* 280 U. S. 124. That the present gifts were *inter vivos,* made in the lifetime of the donors and effected as are any other dispositions of property passing from the donors independently of death, is not in dispute. The question then is, not whether they may be taxed, but, more narrowly, whether the Congressional selection of some such gifts—those made within two years of death—and their taxation as though made at death, as an adjunct to the estate tax, is so arbitrary and unreasonable as to amount to a taking of property without due process of law, prohibited by the Fifth Amendment.

That question was not answered by *Schlesinger* v. *Wisconsin,* 270 U. S. 230. If it had been, this case could and doubtless would be disposed of *per curiam* on the authority of that one. This case comes to us after ten years of experience in the administration of the estate tax, an experience which was not available, or at least not presented, in the *Schlesinger* case. There, all gifts made within six years of death were taxed. Here, only those within two years of death are within the statute. There, the tax was a succession tax and so was a burden on the right to receive, *Leach* v. *Nichols, ante,* p. 165, and necessarily payable by the donee, but at rates and valuations prevailing at the time of the donor's death. Here, the tax was upon the transfer effected by the donor's gift after the enactment of the statute, and is payable from the donor's estate at the same rates and values as though it had passed at his death. It burdens the estate of the donor before distribution, exactly as does the estate tax. *New York Trust Co.* v. *Eisner,* 256 U. S. 345; *Leach* v. *Nichols, supra.* In the *Schlesinger* case, the Court declared (p. 240) that the gifts were " subjected to graduated taxes which could not properly be laid on all gifts or, indeed, upon any gift without testamentary character."

And in stating the argument presented and rejected there, the Court said (p. 240):

" The presumption and consequent taxation are defended upon the theory that, exercising judgment and discretion, the legislature found them necessary in order to prevent evasion of inheritance taxes. That is to say 'A' may be required to submit to an exactment forbidden by the Constitution if this seems necessary in order to enable the State readily to collect lawful charges against 'B.' "

Here, a graduated tax imposed by Congress on gifts *inter vivos* is not forbidden, *Bromley* v. *McCaughn, supra,* and the case is not one where A's property is taxed to enable the Government to collect lawful charges against B. Here A's gift, which may be lawfully taxed, is in this instance, taxed because it removes property from the operation of another tax, which, but for the gift, would be applied to the property at A's death. Concededly there is nothing in the Federal Constitution or laws which necessarily precludes taxation of gifts at the same rate and value as if they had passed at the donor's death, rather than at the rate and value prevailing at the time of the gift. The tax upheld in *Bromley* v. *McCaughn, supra,* taxed all gifts *inter vivos* at the same rates and with the same exemptions as in the case of testamentary transfers. In *Milliken* v. *United States,* 283 U. S. 15, 20, a selected class of gifts *inter vivos,* which were not testamentary although made in contemplation of death, were so taxed as a part of the donor's estate. See *Phillips* v. *Dime Trust & Safe Deposit Co.,* 284 U. S. 160. In *Tyler* v. *United States,* 281 U. S. 497, we upheld taxation, as a part of the donor's estate, of another selected class of gifts *inter vivos,* estates by the entirety donated by one spouse for the benefit of both, although the gift was not testamentary and neither title, possession, nor enjoyment passed at death. Similar taxation of gifts made *inter*

*vivos,* but finally effective only at death, was sustained in *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, and *Chase National Bank* v. *United States,* 278 U. S. 327; see *Taft* v. *Bowers,* 278 U. S. 470, 482.

In the *Schlesinger* case the classification of the gifts selected for taxation under the state statute was deemed to be so arbitrary as to violate the Fourteenth Amendment, which forbids state legislation denying equal protection of the laws. Here, we are concerned only with the Fifth Amendment. As was said by this Court in *LaBelle Iron Works* v. *United States,* 256 U. S. 377, 392:

" The Fifth Amendment has no equal protection clause; and the only rule of uniformity prescribed with respect to duties, imposts and excises laid by Congress is the territorial uniformity required by Art. I, § 8. . . . The difficulty of adjusting any system of taxation so as to render it precisely equal in its bearing is proverbial, and such nicety is not even required of the States under the equal protection clause, much less of Congress under the more general requirement of due process of law in taxation." See *Treat* v. *White,* 181 U. S. 264, 269; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 158; *Barclay & Co.* v. *Edwards,* 267 U. S. 442, 450.

No tax has been held invalid under the Fifth Amendment because based on an improper classification, and it is significant that in the entire one hundred and forty years of its history, the only taxes held condemned by the Fifth Amendment were those deemed to be arbitrarily retroactive. See *Nichols* v. *Coolidge,* 274 U. S. 531; *Untermyer* v. *Anderson,* 276 U. S. 440; *Coolidge* v. *Long,* 282 U. S. 582.

It is, I think, plain, then, that this tax cannot rightly be held unconstitutional on its face. These gifts *inter vivos,* not being immune from taxation, and the obvious and permissible purpose of the present and related sections being to protect the revenue derived from the tax-

ation of estates,[4] want of due process in taxing them can arise only because the selection of this class of gifts within two years of death, for taxation at the prescribed rates, is so remote from the permissible policy of taxing transfers at death or so unrelated to it as to be palpably arbitrary and unreasonable.

It is evident that the practice of disposing of property by gift *inter vivos,* if generally adopted, would, regardless of the age or motive of the donor, defeat or seriously impair the operation of the estate tax, and that the practice would be encouraged if such gifts, made shortly before the death of the donor, were left free of any form of taxation. That in itself would be a legitimate ground for taxing all gifts at the same rates as legacies, as was done by the gift tax; but since the object is to protect the revenue to be derived from the estate tax, the Government is not bound to tax every gift without regard to its relation to the end sought or the convenience and expense of the Government in levying and collecting it. It may aim at the evil where it exists and select for taxation that class of gifts which experience has shown tends most to defeat the estate tax. This Court has held explicitly that the Fourteenth Amendment does not forbid the selection of subjects for one form of taxation for the very reason that they may not be readily or effectively reached by another tax which it is the legislative policy to maintain. *Watson* v. *State Comptroller,* 254 U. S. 122, 124, 125. And since the imposition of the one tax is induced by the purpose to compensate for the loss of the other, the effect in accomplishing this result may itself be the basis of the selection of subjects of taxation. *St. John* v. *New York,* 201 U. S. 633; *District of Columbia*

---

[4] House Report, Ways and Means Committee, No. 1, 69th Congress, 1st Sess., p. 15. See *Tyler* v. *United States,* 281 U. S. 497, 505; *Milliken* v. *United States,* 283 U. S. 15, 20.

v. *Brooke,* 214 U. S. 138, 150; *Shevlin-Carpenter Co.* v. *Minnesota,* 218 U. S. 57, 69.

. That being the object here, it is not imperative that the motive of the donor be made the exclusive basis of the selection of these gifts for taxation, as in the case of gifts made in contemplation of death. The fact that such gifts, made shortly before death, regardless of motive, chiefly contribute to the withdrawal of property from operation of the estate tax; is enough to support the selection, even though they are not conscious evasions of the estate tax, and opprobrious epithets can not certainly be applied to them. The opinion of the Court does not deny that Congress has power to select, on this basis, certain gifts to be taxed as estates are taxed. In fact, this Court has recently held that Congress does possess that power and has said so in language completely applicable to the present tax. In *Tyler* v. *United States,* 281 U. S. 497, 505, the tax on estates by the entirety, as a part of the decedent's estate passing to the surviving spouse, was upheld regardless of the motive which inspired it, and the decision was rested on the sole and only possible ground that " the evident and legitimate aim of Congress was to prevent an avoidance in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds had been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part entirely appropriate as a means to that end." See also *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339; *Taft* v. *Bowers,* 278 U. S. 470, 482.

The gifts taxed may, in some instances, as the present opinion states, bear no relation whatever to death, except that all are near death. But that all do have an intimate and vital relation to the policy of taxing the estates of decedents at death, cannot be gainsaid, for what would

otherwise be taxed is, by the gift, withdrawn from the operation of the taxing act, and the revenue derived-from the taxation of estates necessarily impaired, unless the act which impairs it, the giving away of property *inter vivos*, is itself taxed. It cannot be said generally that gifts made near the time of death do not have a greater tendency to defeat the estate tax than gifts made at periods remote from it, both because of the greater number and amounts of the former and because such gifts more certainly withdraw the property from the operation of the estate tax than do the earlier and relatively infrequent gifts of property which may be lost or destroyed before the donor's death. Gifts of amounts in excess of $5,000 to one donee in any one year, which alone are taxed, are usually made from substantial fortunes which, in the generality of cases, are accumulated relatively late in life, and the great bulk of which, if not given away in life, would pass at death. Nor can it be denied that the cost and inconvenience of collecting the tax on earlier, generally smaller, and less frequent gifts, which led to the repeal of the gift tax, may not themselves require or justify a distinction between them and gifts made nearer to the time of death.

Since Congress has power to make the selection if the facts warrant, we cannot say *a priori* that such facts do not exist or that in making the selection which it did, Congress acted arbitrarily or without the exercise of the judgment or discretion which rightfully belong to it. *Stebbins* v. *Riley*, 268 U. S. 137, 143. As was said in *Ogden* v. *Saunders*, 12 Wheat. 213, 270, it is but a proper ". . . respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favour of its validity, until its violation of the constitution is proved beyond all reasonable doubt."

The existence of facts underlying constitutionality is always to be presumed, and the burden is always on him who assails the selection of a class for taxation to establish that there could be no reasonable basis for the legislative judgment in making it.[5]

But even if that presumption is not to be indulged, in passing on the power of Congress to impose this tax, we cannot rightly disregard the nature of the difficulties involved in the effective administration of a scheme for taxing transfers at death, and we cannot close our eyes to those perhaps less apparent, which have been disclosed by the experience with this form of taxation in the United States, which led to the enactment of the present statute.

It is evident that the estate tax, if not supplemented by an effective provision taxing gifts tending to defeat it, would, to a considerable extent, fail of its purpose. The tax on gifts made in contemplation of death, devised for this purpose, has been upheld by this Court, *Milliken* v. *United States,* 283 U. S. 15, but the difficulties of its successful administration have become apparent. The donor of property which would otherwise be subject to heavy taxes at his death does not usually disclose his purpose in making the gift, even if he does not conceal it. He may not, and often does not, analyse his motives or determine for himself whether his dominating purpose is to substitute the gift for a testamentary disposition which would subject it to the tax, see *Milliken* v. *United States, supra,* p. 23; *United States* v. *Wells,* 283 U. S. 102, or

---

[5] *Sinking-Fund Cases,* 99 U. S. 700, 718; *Nicol* v. *Ames,* 173 U. S. 509, 514–515; *Buttfield* v. *Stranahan,* 192 U. S. 470, 492; *Graves* v. *Minnesota,* 272 U. S. 425, 428; *Zahn* v. *Board of Public Works,* 274 U. S. 325, 328; *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 395; *Hardware Dealers Mut. Fire Ins. Co.* v. *Glidden Co.,* 284 U. S. 151, 158; *O'Gorman & Young, Inc.* v. *Hartford Fire Ins. Co.,* 282 U. S. 251, 257–258.

whether it is so combined with other motives as to preclude its taxation, even though in making it the donor cannot be unaware that he, like others, must die and that his donation will, in the natural course of events, escape the tax which will be imposed on his other property passing at death. See *United States* v. *Wells, supra.* The difficulty of searching the motives and purposes of one who is dead, the proofs of which, so far as they survive, are in the control of his personal representatives, need not be elaborated. As the event has proved, the difficulties of establishing the requisite mental state of the deceased donor has rendered the tax on gifts in contemplation of death a weak and ineffective means of compensating for the drain on the revenue by the withdrawal of vast amounts of property from the operation of the estate tax.

The Government has been involved in 102 cases arising under § 202 (b) of the 1916 Revenue Act and its successors.[6] This number does not include any of the cases arising under § 302 (c) of the Revenue Act of 1926, the statute under present consideration. And it includes only those cases, decision of which was determined by the answer made to the question of fact, whether a gift had been made in contemplation of death.

In 20 cases involving gifts of approximately $4,250,000, the Government was successful.[7] In 3 it was partially

---

[6] Revenue Act of 1916, § 202 (b), c. 463, 39 Stat. 756, 778; Revenue Act of 1918, § 402 (c), c. 18, 40 Stat. 1057, 1097; Revenue Act of 1921, § 402 (c), c. 136, 42 Stat. 227, 278; Revenue Act of 1924, § 302 (c), c. 234, 43 Stat. 253, 304.

[7] In 18 of these cases the gifts were made within two years of death. The value of the gifts so made was approximately $3,000,000, exclusive of certain realty and personalty, the value of which was not definitely indicated in the reports. Among this group of cases was one in which the gift was $880,100, made when the donor was advised by his physician that he was about to die, *Phillips* v. *Gnichtel,* 27 F. (2d)

successful;[8] and in 78 involving gifts largely in excess of $120,000,000, it was unsuccessful. In another the jury disagreed.[9]

In 56 of the total of 78 cases decided against the Government, the gifts were made within two years of death. In this group of 56 donors, two were more than ninety years of age at the time of death; ten were between eighty and ninety; twenty-seven were between seventy and eighty; six were between sixty and seventy; six were between fifty and sixty; and only one was younger than fifty.[10] There was one gift of $46,000,000, made within two months of death by a donor seventy-one years of age at death;[11] one of $36,790,000 made by a donor over eighty, who consulted a tax expert before making the

662, cert. den. 278 U. S. 636; another of $421,200 made within four months of death by a donor seventy-two years of age, *Luscomb* v. *Commissioner*, 30 F. (2d) 818; one of over $1,000,000, *Brown* v. *Routzahn*, 58 F. (2d) 329 (N. D. Ohio); and one of $312,000, *Kunhardt* v. *Bowers*, 57 F. (2d) 1054 (S. D. N. Y.). Two of the gifts were of more than $200,000, *Rengstorff* v. *McLaughlin*, 21 F. (2d) 177; Green v. Commissioner, 6 B. T. A. 278. Six were of more than $100,000, Farmers Bank & Trust Co. v. Commissioner, 10 B. T. A. 43; Burling v. Commissioner, 13 B. T. A. 264; Hale v. Commissioner, 18 B. T. A. 342; Sugerman v. Commissioner, 20 B. T. A. 960; *McClure* v. *Commissioner*, 56 F. (2d) 548 (C. C. A. 5th); *Neal* v. *Commissioner*, 53 F. (2d) 806. Two were of more than $50,000, Second National Bank v. Commissioner, 12 B. T. A. 1066; Latham v. Commissioner, 16 B. T. A. 48. The others were either less than that amount, Kahn v. Commissioner, 4 B. T. A. 1289; Wheelock v. Commissioner, 13 B. T. A. 828; Rolfe v. Commissioner, 16 B. T. A. 519; or the appraised value of the gifts is not shown, *Schoenheit* v. *Lucas*, 44 F. (2d) 476; Lehman v. Commissioner, 6 B. T. A. 791; Appeal of Ward, 3 B. T. A. 879.

[8] Serrien v. Commissioner, 7 B. T. A. 1129; *Bloch* v. *McCaughn*, not reported (E. D. Pa.); Kelly v. Commissioner, 8 B. T. A. 1193.

[9] *Byron* v. *Tait*, not reported (D. Md.).

[10] The age of four of the donors is not shown definitely by the reports, but as to at least three of these, there are indications that the decedents were of advanced years.

[11] *Estate of Astor*, not yet reported (S. D. N. Y.).

gift;[12] one of over $10,400,000 made by a donor aged seventy-six, six months before death;[13] and one by a donor aged seventy-five at death, in which the tax assessed was over $1,000,000.[14] There was one other in excess of $2,000,000;[15] 5 others largely in excess of $1,000,000;[16] 4 others in excess of $500,000;[17] 13 in excess of $250,000;[18] and 14 in excess of $100,000.[19] The value of the gifts was not shown definitely in 3 cases;[20] 12 involved gifts total-

---

[12] *Commissioner* v. *Nevin,* 47 F. (2d) 478; cert. den. 283 U. S. 835.

[13] *Rea* v. *Heiner,* 6 F. (2d) 389.

[14] *Flannery* v. *Willcuts,* 25 F. (2d) 951.

[15] White *v.* Commissioner, 21 B. T. A. 500.

[16] Crilly *v.* Commissioner, 15 B. T. A. 470; Gimbel *v.* Commissioner, 11 B. T. A. 214; *Stieff* v. *Tait,* not reported (D. Md.); *Loughran* v. *McCaughn,* not reported (E. D. Pa.); American Security & Trust Co. *v.* Commissioner, 24 B. T. A. 334.

[17] *Esty* v. *Mitchell,* unreported (D. Mass.); *Brehmen* v. *McCaughn,* unreported (E. D. Pa.); *United States* v. *Wells,* 283 U. S. 102; Appeal of Borden, 6 B. T. A. 255.

[18] *Mather* v. *McLaughlin,* 57 F. (2d) 223 (E. D. Pa.); *Pohlman* v. *United States,* not reported (D. Neb.); *Apperson* v. *Thurman,* not reported (D. Ind.); *Beltzhoover* v. *Donald,* not reported (S. D. Miss.); *Safford* v. *United States,* 65 Ct. Cl. 242; Romberger *v.* Commissioner, 21 B. T. A. 193; Moore *v.* Commissioner, 21 B. T. A. 279; Lavelle *v.* Commissioner, 8 B. T. A. 1150; Boggs *v.* Commissioner, 11 B. T. A. 824; White *v.* Commissioner, 15 B. T. A. 470; Jaeger *v.* Commissioner, 16 B. T. A. 897; Fidelity-Philadelphia Trust Co. *v.* Commissioner, 17 B. T. A. 910; *Vaughn* v. *Riordan,* 280 Fed. 742.

[19] *Wilfley* v. *Helmich,* 56 F. (2d) 845 (E. D. Mo.); *Richardson* v. *Tait,* not reported (D. Md.); *Armstrong* v. *Rose,* not reported (S. D. Ga.); *Off* v. *United States,* 35 F. (2d) 222; *Loetscher* v. *Burnet,* 60 App. D. C. 38; 46 F. (2d) 835; *Howard* v. *United States,* 65 Ct. Cl. 332; Allen *v.* Commissioner, 20 B. T. A. 713; Rogers *v.* Commissioner, 21 B. T. A. 1124; Mississippi Valley Trust Co. *v.* Commissioner, 22 B. T. A. 136; Gerry *v.* Commissioner, 22 B. T. A. 748; Estate of Connell, 11 B. T. A. 1254; United States Trust Co. *v.* Commissioner. 14 B. T. A. 312; Pratt *v.* Commissioner, 18 B. T. A. 377; *Meyer* v. *United States,* 60 Ct. Cl. 474.

[20] *Beeler* v. *Motter,* 33 F. (2d) 788; Lozier *v.* Commissioner, 7 B. T. A. 1050; Heipershausen *v.* Commissioner, 18 B. T. A. 218.

ling less than $100,000.[21]   In the remaining 22 cases the gifts were made more than two years before the death of the donor.[22]

The judgment of the Ways and Means Committee that the provision of § 302 (c) of the 1926 Act was required to stop the drain on the revenues from the estate tax, is strikingly confirmed by these 56 cases. The value of the gifts in those cases alone, was $113,401,157, a total that does not include realty and personalty of undetermined value or the very large gifts on which the Government, in the case already noted, sought to collect a tax of more than $1,000,000.

In many of the cases, notably those in which large amounts were involved, the gift was substantially all the donor's estate. In the others, the addition of the amount

[21] *Root* v. *United States,* 56 F. (2d) 857 (S. D. Fla.); *Molton* v. *Sneed,* not reported (N. D. Ala.); *Owen* v. *Gardner,* not reported (E. D. N. Y.); Cromwell *v.* Commissioner, 24 B. T. A. 461; Appeal of Kaufman, 5 B. T. A. 31; Schulz *v.* Commissioner, 7 B. T. A. 900; Davis *v.* Commissioner, 9 B. T. A. 1212; Goldman *v.* Commissioner, 11 B. T. A. 92; Gaither *v.* Miles, 268 Fed. 692; Appeal of Richardson, 1 B. T. A. 1196; Appeal of McDonald, 2 B. T. A. 1295; Appeal of Hillenmeyer, 2 B. T. A. 1322.

[22] The total value of these gifts, exclusive of realty, was $6,707,056. *Tesdell* v. *United States,* not reported (S. D. Iowa); *Mason* v. *United States,* 17 F. (2d) 317; *Tips* v. *Bass,* 21 F. (2d) 460; *Smart* v. *United States,* 21 F. (2d) 188; *McCaughn* v. *Carvill,* 43 F. (2d) 69; Phillips *v.* Commissioner, 7 B. T. A. 1054; Stein *v.* Commissioner, 9 B. T. A. 486; Baum *v.* Commissioner, 21 B. T. A. 176; Appeal of Spafford, 3 B. T. A. 1016; Hausman *v.* Commissioner, 5 B. T. A. 199; Fleming *v.* Commissioner, 9 B. T. A. 419; Brehmer *v.* Commissioner, 9 B. T. A. 423; Hicks *v.* Commissioner, 9 B. T. A. 1226; Wolfermann *v.* Commissioner, 10 B. T. A. 285; Illinois Merchants Trust Co. *v.* Commissioner, 12 B. T. A. 818; Bishop *v.* Commissioner, 14 B. T. A. 130; Fincham *v.* Commissioner, 16 B. T. A. 1418; Hunt *v.* Commissioner, 19 B. T. A. 624; Siegel *v.* Commissioner, 19 B. T. A. 683; *Polk* v. *Miles,* 268 Fed. 175; *Fidelity & Columbia Trust Co.* v. *Lucas,* 7 F. (2d) 146; Appeal of Starck, 3 B. T. A. 514.

of the gifts to the estate of the donor would place the tax on the gifts in the higher brackets, so that the total amount of the tax that might have been collected is much larger than the tax that would have been payable on the gifts considered separately from the estates of which they had been part. It is also fairly inferable that the cases actually litigated constitute only a small portion of the instances in which large gifts were made within two years of the donor's death.

These are but a few of the many details of the administration of the Act supporting the conclusion of Congressional committees that large amounts of money and property were being withdrawn from the operation of the estate tax by gifts *inter vivos* under circumstances which clearly indicated that but for the gifts all would have been taxed as a part of the donor's estates, and that by far the greater number and amount of such gifts had been made within two years of death by persons of advanced age.

The present tax, if objectionable, is not so because motive or intention of the donor is not made the basis of the classification. It is not so because it does not tend to prevent or compensate for the evil aimed at. It is not so because the revenue leak will not be effectively stopped by including in the estate tax all gifts made within two years of death. Legislation to accomplish that end, and reasonably adapted to it, cannot be summarily dismissed as being arbitrary and capricious. Nor can it be deemed invalid on the assumption that Congress has acted arbitrarily in drawing the line between all gifts made within two years of death and those made before. Congress cannot be held rigidly to a choice between taxing all gifts or taxing none, regardless of the practical necessities of preventing tax avoidance, and regardless of experience and practical convenience and expense in administering the tax. Even the equal protection clause of the Four-

teenth Amendment has not been deemed to impose any such inflexible rule of taxation.

The very power to classify involves the power to recognize and distinguish differences in degree between those things which are near and those which are remote from the object aimed at. *Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322; see *Miller* v. *Wilson,* 236 U. S. 373, 384. It has never occurred to anyone to suggest that a state could not, by statute, fix the age of consent, or the age of competence to make a will or conveyance, although some included within the class selected as competent might be less competent than some who are excluded. In the exercise of the police power, classification may be based on mere numbers or amounts where the distinction between the class appropriately subject to classification and that not chosen for regulation, is one of degree.[23]

As all taxes must be levied by general rules, there is a still larger scope for legislative action in framing revenue laws, even under the Fourteenth Amendment, with its guarantee of equal protection of the laws. The legislature may grant exemptions. *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 300; *Hope Natural Gas Co.* v. *Hall,* 274 U. S. 284, 289; *Missouri* v. *Dockery,* 191 U. S. 165. It may impose graduated taxes on gifts, inheritances, or on income. *Bromley* v. *McCaughn,* 280 U. S. 124; *Knowlton* v. *Moore,* 178 U. S. 41, 109; *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1, 25; see also

[23] *Miller* v. *Schoene,* 276 U. S. 272; *Reinman* v. *Little Rock,* 237 U. S. 171; *Welch* v. *Swasey,* 214 U. S. 91. Consider also *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365; *Missouri, K & T. Ry. Co.* v. *May,* 194 U. S. 267; *Murphy* v. *California,* 225 U. S. 623; *Keokee Consolidated Coke Co.* v. *Taylor,* 234 U. S. 224, 227. And see particularly the cases collected in footnote 1 of the dissenting opinion of Mr. Justice Brandeis in *Louisville Gas & Electric Co.* v. *Coleman,* 277 U. S. 32, 42–44.

*Stebbins* v. *Riley,* 268 U. S. 137.[24]   It may impose a tax that falls more heavily on ownership of chain stores than on ownership of a smaller number.   *State Board of Tax Commissioners* v. *Jackson,* 283 U. S. 527; *Great Atlantic & Pacific Tea Co.* v. *Maxwell,* 284 U. S. 575.   And generally it may create classes for taxation wherever there is basis for the legislative judgment that differences in degree produce differences in kind.[25]

The purpose here being admittedly to impose a tax on a privilege—that of making gifts *inter vivos*—to the extent that its exercise substantially impairs the operation of the tax on estates, it was for Congress to say how far that impairment. extends and how far it is necessary to go in the taxation of gifts either to prevent or to compensate for it.   Unless the line it draws is so wide of the mark as palpably to have no relation to the end sought, it is not for the judicial power to reject it and substitute another, or to say that no line may be drawn.

---

[24] Other types of graduated taxes have been upheld in *Clark* v. *Titusville,* 184 U. S. 329, 331; *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 69–70.   And see *Salomon* v. *State Tax Commission,* 278 U. S. 484; *Keeney* v. *New York,* 222 U. S. 525, 536; *McCray* v. *United States,* 195 U. S. 27.   See also *McKenna* v. *Anderson,* 31 F. (2d) 1016, cert. den. 279 U. S. 869; *F. Couthoui, Inc.* v. *United States,* 54 F. (2d) 158, cert. den., *post,* p. 548.

[25] Instances of classification for taxation dependent on numbers or amounts are *Quong Wing* v. *Kirkendall,* 223 U. S. 59; *Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322.   See *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237.   Taxing statutes have been upheld even though the subject of taxation was valued in a manner not necessarily related to real value, where administrative necessities have made such classification desirable.   *Hatch* v. *Reardon,* 204 U. S. 152; *New York* v. *Latrobe,* 279 U. S. 421; *International Shoe Company* v. *Shartel,* 279 U. S. 429; *Paddell* v. *New York,* 211 U. S. 446.   An annual excise tax on the privilege of selling cigarettes, applicable to retailers and not wholesalers, has been held constitutional, even though set at a flat amount which bore more heavily on small dealers than on large.   See *Cook* v. *Marshall County,* 196 U. S. 261.

The objection that the gifts are taxed as a part of the donor's estate, and at the same rates and on values as of the donor's death, has no more force than that made to the selection for taxation of gifts made within two years of death. Since the basis of the tax is that it compensates for the drain on the estate tax, and since it is paid by the donor's estate, which would otherwise be compelled to pay the estate tax on transmission at death, the whole object of the tax on the gifts would be defeated if levied on another basis. In determining the reasonableness of a tax which, like this one, is levied in lieu of another, it is of course necessary to consider all the statutes affecting the subject matter. *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245; *Farmers & Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516, 529. Where the very purpose and justification of the one tax is that it is compensatory for the loss of the other, it is no objection that the one is made the exact equivalent of the other, thus avoiding inequality which, under some circumstances, might be objectionable. See *General American Tank Car Corp.* v. *Day,* 270 U. S. 367. No one has yet indicated precisely in what way this method of measuring the tax works any greater injustice or hardship than the tax on estates. It is certainly not greater where, as here, the tax is paid from the estate of the donor who, regardless of his age, in giving away his property after the statute was in force, took his chances that death within two years would bring it into his estate for taxation where it would have been if the gift had not been made. See *Milliken* v. *United States, supra,* pp. 23, 24. A very different case would be presented if the taxed gift were made before the enactment of the taxing statute and many years before the death, as in *Frew* v. *Bowers,* 12 F. (2d) 625, 630.[26] See *Nichols*

---

[26] In this case the Government sought to collect the tax on a trust created before the estate tax was passed, and twelve years before

v. *Coolidge, supra.* The application of the estate tax to the other types of gift *inter vivos* mentioned in the Act has uniformly been upheld, even though the gift was made more than two years before death. *Milliken* v. *United States, supra; Phillips* v. *Dime Trust and Safe Deposit Co., supra; Tyler* v. *United States, supra; Reinecke* v. *Northern Trust Co., supra; Taft* v. *Bowers, supra.*

I cannot say that the tax on all gifts made in contemplation of death, supplemented by that imposed on all others made within two years of death, is not adapted to a legitimate legislative object. The history of the litigation over gifts made in contemplation of death, to which reference has been made, and the reports of Congressional Committees prepared after extensive investigation and with expert aid, plainly indicate that it is. I can find no adequate reason for saying that the tax is invalid. The denial of its validity seems to me to rest on no substantial ground and to be itself an arbitrary and unreasonable restriction of the sovereign power of the Federal Government to tax, for which neither the words of the Fifth Amendment nor any judicial interpretation of it affords justification.

The questions should be answered in the negative.

MR. JUSTICE BRANDEIS joins in this opinion.

the settlor's death. Judge Learned Hand, concurring, said, p. 630: " As to transfers made after the law went into effect, I have nothing to say; one may insist that settlors take their chances. But as to those made before the law was passed it appears that the result is too whimsical to stand. There are settlements which the settlor outlives for 30 or 40 years."